[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 639 
In November, 1923, a grand jury of Cass county found a true bill against one Halvor J. Hagen, charging him with a felony, to wit: of knowingly receiving deposits in an insolvent bank in violation of §§ 5175 and 5176, Comp. Laws 1913. He was accordingly indicted and upon arraignment pleaded not guilty thereto. The venue of the action was changed to Grand Forks county. The cause came on for trial before Honorable W.J. Kneeshaw and a jury. On or about March 29th, 1924, the jury rendered a verdict of guilty as charged in the indictment against said Hagen, the defendant therein. Thereafter, on June 2d 1924, judgment on said verdict was duly rendered and said defendant Hagen was sentenced to a term of two and a half years in the penitentiary, from which judgment and sentence an appeal was immediately taken. Pending the appeal, the lower court granted a stay. On May 5th, 1925, the state moved this court for dismissal of said appeal, alleging as a reason therefor that said defendant, Hagen, had failed to prosecute his said appeal. Defendant appeared in opposition to said motion and urged that on or about the 2nd day of February, 1925, the stenographic notes of the testimony taken by the official court reporter at the time of the trial, had been stolen after about two thirds of said notes had been transcribed, that he could not perfect a statement of the case on appeal, and at the same time moved this court for a new trial, because of the loss of said notes. This court denied the motion to dismiss the appeal as well as the motion for new trial, the order being entered on or about June 14th, 1925. *Page 640 
On July 8th, 1925, the defendant, Hagen, noticed for hearing before the trial court a motion for new trial in said cause, setting forth as grounds therefor the loss of said stenographic notes, that a complete transcript of the evidence taken at the trial of said action was necessary from which to make a statement of the case and specifications of errors on appeal and that by reason of the loss of said stenographic notes he has been precluded from perfecting his appeal in said action. Said motion was by said trial court denied and from the order denying said motion an appeal was taken to this court. The ruling on said motion was affirmed by this court May 3d 1926. State v. Hagen, ante, 136, 208 N.W. 947. Thereafter the state again moved the dismissal of said appeal, which motion was granted July 19th, 1926, the judgment of the district court in said action being thereby affirmed, and the remittitur of said cause to the district court was transmitted on August 16th, 1926. The state caused said defendant to be notified to appear before said trial judge on August 28th, 1926, at 2:00 o'clock P.M., at which time it was the intention of the state to move the court for a reimposition of the sentence theretofore rendered and to do all things necessary to incarcerate the defendant in the state penitentiary. Thereupon, said Hagen, as plaintiff, but without consent of the state of North Dakota, commenced an action in equity against George F. Shafer, Attorney General of North Dakota, George A. Bangs, Special Assistant Attorney General, Ralph F. Croal, clerk of the district court, first judicial district, Cass county, North Dakota, John C. Ross, sheriff of Cass county, North Dakota, H.F. Horner, state's attorney of Cass county, Odin Overby, sheriff of Grand Forks county, C.A. Heen, clerk of court of Grand Forks county, J.B. Wineman, state's attorney of Grand Forks county, John Lee, as warden of the state penitentiary at Bismarck, North Dakota, as defendants, wherein he prayed for judgment against said defendants that they be "permanently and forever restrained from enforcing said judgment and sentence, and that the plaintiff be given a new trial, or such other relief as to the court may seem just, and, further, that the defendants be restrained from in any manner attempting to enforce the aforesaid judgment and sentence, or any other sentence or resentence based upon the aforesaid judgment, during the pendency of this action." The complaint in said action sets out in detail the main events which occurred in this indictment, *Page 641 
trial, conviction and sentence of said Hagen, substantially as herein recited. It alleges the loss of the stenographic notes taken by the reporter upon the trial of the case of State v. Hagen; that "the court erroneously excluded material evidence favorable to the plaintiff," defendant in that case, and that "the court erroneously admitted testimony over the objection of counsel for the defendant in said criminal cause, which testimony was highly prejudicial and injurious to the plaintiff herein." It further alleges "that through no fault of plaintiff herein, he was prevented and prohibited from preparing a true and proper transcript and it became utterly impossible for the plaintiff herein, the defendant in the aforesaid criminal case, to prepare a proper statement of the case and a transcript of the testimony of the erroneous rulings of the court." He alleges in effect that by reason thereof he lost the benefit of his said appeal to this court and was unable to obtain a review of said cause or to obtain a new trial thereof. So far as this record shows, no further proceedings were had in the court where the judgment was entered, but an ex parte application was made to Honorable John C. Lowe, judge of another judicial district for an injunctional order restraining the defendants, during the pendency of said action, from enforcing the judgment and sentence imposed upon said Hagen in said criminal action. In support of said application, Mr. Burdick, as attorney for the plaintiff, Hagen, submitted to said court an affidavit setting forth "that unless restrained during the pendency of this action, the defendants will enforce the judgment and sentence obtained in the former case against the plaintiff in the aforesaid action," and "that a great irreparable injury will be done the plaintiff herein unless the defendants are restrained, etc." Judge Lowe thereupon issued an injunctional order in said cause whereby said district court did "Order and restrain the defendants and each of them from in any manner attempting to enforce or interfere with the plaintiff's person or his liberty under and by virtue of that certain judgment and sentence rendered June 2d 1924, in the district court of Grand Forks county, against the plaintiff herein, in the case of State of North Dakota v. Halvor J. Hagen, during the pendency of this action." This order was served upon the defendants named in the order and complaint, prior to the hour set by Judge Kneeshaw for the appearance of Hagen before him for the reimposition of sentence. *Page 642 
A petition in behalf of the state, setting forth amongst other things, that the said district court of the Fifth judicial district and the said Honorable John C. Lowe, as judge thereof, are and were without jurisdiction, authority and power to hear or entertain said cause or to make, enter or issue any orders therein, including the restraining order hereinbefore set forth, for the reasons, among others, that said action is brought against the state without its consent thereto and that the state is the real party in interest; that said action is brought to interfere with, impede, restrain and enjoin the administration and enforcement of the criminal laws of the state, was presented to this court; and this court, exercising original jurisdiction, issued its alternative writ of prohibition, directed to said distrct court of the fifth judicial district in and for Ward county, Honorable John C. Lowe, judge thereof, and to U.L. Burdick, attorney for said Halvor J. Hagen, commanding them and each of them to desist and refrain from any further proceedings in said action until the further order of the court therein, and to show cause on the 8th day of September, 1926, at the supreme court room, in Bismarck, why they should not be absolutely restrained from further proceedings in said action, and why the order of said district court should not be vacated, set aside and annulled.
Judge Lowe made return to said writ that "All the facts set forth in the petition are true to the best of my information and belief and that the jurisdiction exercised by me was so exercised in good faith, believing that such jurisdiction was vested in me and in the court of which I am judge. That such jurisdiction was exercised advisedly, and that objections thereto would be and are unavailing and would not be sustained," and prayed that the alternative writ be dismissed.
The purpose of the writ is that the action of the district court in issuing said injunctional order may be reviewed, and that it may be determined whether such action by said court is without or in excess of the jurisdiction of that court.
The state insists that said equity action, in which said injunctional order was issued by the said district court, is brought against the state without its consent thereto, that the state is the real party defendant, and that a court of equity has no power or authority to enjoin or restrain the enforcement of the criminal laws of the state. The jurisdiction *Page 643 
and power of the said district court to take cognizance of said action and to issue its injunctional order are thereby challenged.
The doctrine is unassailable that a state cannot be sued as defendant in any court in this country without its permission and consent, except in the limited class of cases in which a state may be made a party in the Supreme Court of the United States by virtue of the original jurisdiction conferred on that court by the Federal Constitution. "The doctrine rests upon reasons of public policy — the inconvenience and danger which would follow from any different rule. It is obvious that the public service would be hindered and the public safety endangered, if the supreme authority could be subjected to a suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government." 25 R.C.L. 412, 413 and cases cited; 36 Cyc. 911; Re Ayers, 123 U.S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164; Pennoyer v. McConaughy, 140 U.S. 1, 35 L. ed. 363, 11 Sup. Ct. Rep. 699; Poindexter v. Greenhow, 114 U.S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 962; Cunningham v. Macon B.R. Co.109 U.S. 446, 27 L. ed. 992, 3 Sup. Ct. Rep. 292, 1609; McClellan v. State, 35 Cal.App. 605, 170 P. 662. The framers of the state Constitution, while recognizing this principle, relaxed the rigid rule somewhat and left the extent of the modification to be largely determined by the legislature. Note the following language: "Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." N.D. Const. § 22. It is to legislative enactment, then, we must turn to ascertain wherein the state has waived its prerogative in this respect. For the waiving of such immunity and the giving of such consent, being entirely voluntary on its part, it may prescribe the cases in which, and the terms and conditions upon which, it may consent to be sued. Wirtz v. Nestos, 51 N.D. 603, 200 N.W. 524. Section 8175, Comp. Laws 1913, reads: "An action respecting the title to property, or arising upon contract may be brought in the district court against the state the same as against a private person." This language is plain — its meaning obvious. Upon no other occasion, except with regard to certain of the state's industries, has the legislature spoken relative to the state's consent to be sued. If *Page 644 
this is a suit against the state, it is obvious that it is not within the classes included in the permission.
The defendants, however, assert that the action for injunction is not against the state, but against the persons named as defendants. Although the state is not specifically named as a party defendant, that is not conclusive of the fact that the suit is not a suit against the state, nor that the state is not the real party in interest. The rule is stated in Ruling Case Law to be as follows: "Suits against officers of a state as representing the state in action or liability, where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the state." 25 R.C.L. 413. See also 36 Cyc. 915; Mullen v. Dwight, 42 S.D. 171, 173 N.W. 645; Love v. Filtsch, 33 Okla. 131, 44 L.R.A.(N.S.) 212, 124 P. 30; McDowell v. Warden, 169 Mich. 332, 135 N.W. 265; Longstreet v. Mecosta County, 228 Mich. 542, 200 N.W. 248; Louisville N.R. Co. v. Railroad Comrs. (Louisville N.R. Co. v. Burr) 63 Fla. 491, 44 L.R.A.(N.S.) 189, 58 So. 543; Re Ayers, 123 U.S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164; Pennoyer v. McConaughy, 140 U.S. 1, 35 L. ed. 363, 11 Sup. Ct. Rep. 699; Fitts v. McGhee, 172 U.S. 516, 32 L. ed. 535, 19 Sup. Ct. Rep. 269; Poindexter v. Greenhow,114 U.S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 963. It has long been well settled by abundant authority that the courts can and will look through and beyond the nominal parties to determine the real parties in interest. In Mullen v. Dwight, supra, the South Dakota supreme court used the following language: "The fact as to whether a particular suit is a suit against a state is not always to be determined by reference to the nominal parties to the record, and, although the contrary was once held, the fact that the state is not named as a party defendant is not conclusive that the suit is not a suit against the state, and a suit in form against a state official may be in fact a suit against the state, although the state is not a party to the record." In McDowell v. Warden, 169 Mich. 332, 135 N.W. 265, that court said: "It was formerly held in this state and elsewhere that in cases where jurisdiction depends on the parties the record must control (citing Osborn v. Bank of United States, 9 Wheat. 738, 6 L. *Page 645 
ed. 204); but it has long since been well settled by abundant authority that the courts can and will look through and beyond the nominal parties on a record to determine who are the real parties in interest to a suit." Many additional authorities are collected in the annotation appearing in 44 L.R.A.(N.S.) at page 189.
While the complaint does not specifically allege the official capacity of the defendants, except as stated in the title to the action, it is beyond the realm of controversy that the defendants are so named because they are the officials of the state and county through whom alone the state is able to act in the administration of its criminal laws and in the enforcement of judgments in criminal actions rendered in its favor. A state can never appear or be represented in any court in a litigated case, save by and through its proper officials. The complaint charges that all these officials are intent upon the performance of acts that are merely statutory duties if the state's judgment is to be made effective. The defendants are charged with no dereliction of duty; nor have they signified an intention to perform any unlawful act. The acts they are restrained from performing are lawful acts and duties enjoined upon them by statute, to the end that the state's judgment may be rendered effective. See subd. 4, § 7214, Comp. Laws 1913; State ex rel. Lemke v. District Ct.49 N.D. 27, 186 N.W. 381; Re Ayers, 123 U.S. 443, 31 L. ed. 216, 8 Sup. Ct. Rep. 164.
Peculiarly applicable to the facts in this case is the leading case of Re Ayers, supra, where a like question, in principle, arose under the 11th amendment to the Federal Constitution. It appears from the facts in that case that a suit in equity was instituted in the circuit court of the United States against the attorney general and auditor of Virginia, and against the treasurers and commonwealth attorneys of counties, cities and towns of the state, to enjoin and restrain them from bringing or commencing any suit which it became their duty to institute under the provisions of a certain act of the legislature of 1887 or from doing anything to put that act into operation. The court enjoined each and all of said officers, accordingly. Subsequently the attorney general disobeyed said order of injunction, was cited to show cause why he should not be punished, was adjudged guilty of contempt and committed until he purged himself of his contempt. He applied directly to the Supreme Court of the United States for a writ *Page 646 
of habeas corpus, which was granted, and, upon hearing, he was released from custody. The order for his discharge recited that the suit in which the injunction was granted was "in substance and in law a suit against the state of Virginia" and "within the prohibition of the eleventh amendment." In part, the court said: "The relief sought is against the defendants, not in their individual but in their representative capacity as officers of the state of Virginia. The acts sought to be restrained are the bringing of suits by the state of Virginia in its own name and for its own use. If the state had been made a defendant to this bill by name, charged according to the allegations it now contains, — supposing that such a suit could be maintained, — it would have been subjected to the jurisdiction of the court by process served upon its governor and attorney general, according to the precedents in such cases. If a decree could have been rendered enjoining the state from bringing suits against its tax payers, it would have operated upon the state only through the officers who by law were required to represent it in bringing such suits, viz.: the present defendants, the attorney general and the commonwealth's attorneys for the several counties. For a breach of such an injunction these officers would be amenable to the court as proceeding in contempt of its authority and would be liable for punishment therefor by attachment and imprisonment. The nature of the case, as supposed, is identical with that of the case as actually presented in the bill with the single exception that the state is not named as a defendant. How else can the state be forbidden by judicial process to bring actions in its name, except by constraining the conduct of its officers, its attorneys and its agents? And if all such officers, attorneys and agents are personally subjected to the process of the court, so as to forbid their acting in its behalf, how can it be said that the state itself is not subjected to the jurisdiction of the court as an actual and real defendant?" The court continues:
"The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties. It was thought to be neither becoming nor convenient that the several states of the Union, invested with that large residuum of sovereignty which has not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons, whether citizens of other *Page 647 
states or aliens, or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the members of judicial tribunals without their consent and in favor of individual interests. To secure the manifest purposes of the constitutional exemption guaranteed by the 11th amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a state by name, but those also against its officers, agents and representatives where the state, though not named as such, is nevertheless the only real party against which alone in fact the relief is asked and against which the judgment or decree effectively operates."
There can be no escape from the conclusion that the equitable action under consideration is a suit against the state as the real party in interest. It is a well known general rule of law of almost universal application that a court of equity has no jurisdiction or power to enjoin criminal proceedings. 14 R.C.L. 426; 32 C.J. 279; 6 Pom. Eq. Jur. § 644; 2 Bishop, Crim. Proc. 2d ed. § 1414; Story, Eq. Jur. 14th ed. § 1217; 16 Am. Eng. Enc. Law, 2d ed. 370. The foundation of the rule rests, in part at least, upon the proposition that in criminal actions the state is the plaintiff and cannot be sued. 2 Bishop, Crim. Proc. § 1414; Kelly v. Conner, 122 Tenn. 339, 25 L.R.A.(N.S.) 201, 123 S.W. 622; Littleton v. Burgess, 14 Wyo. 173, 2 L.R.A.(N.S.) 631, 82 P. 864; People v. Superior Ct. 190 Cal. 624, 213 P. 945; State v. Southern R. Co. 145 N.C. 495, 13 L.R.A.(N.S.) 966,59 S.E. 570; Ferguson v. Martineau, 115 Ark. 317, 171 S.W. 472, Ann. Cas. 1916E, 421; Hall v. Dunn, 52 Or. 475, 25 L.R.A.(N.S.) 193, 97 P. 811; Union Trust Co. v. Stearns (C.C.) 119 Fed. 790.
In State v. Southern R. Co. 145 N.C. 495, 13 L.R.A.(N.S.) 966,59 S.E. 570, we find the following: "In regard to the first objection (the courts cannot enjoin the enforcement of the criminal law), we must bear in mind that, if the court should issue an injunction against the institution of a criminal prosecution, it would not only interfere with the due administration of the criminal law, which is of the first importance in any well ordered system of government, but it would *Page 648 
have to restrain action by the state in whose sovereign name and capacity all criminal cases are commenced and prosecuted."
The facts as reported in Littleton v. Burgess, 14 Wyo. 173, 2 L.R.A.(N.S.) 631, 82 P. 864, bear a similarity to those in the matter now before us. In that case, an action was brought in the district court by plaintiff against defendant as prosecuting attorney, for the purpose of restraining the latter from prosecuting the former for violation of a statute of the state prohibiting gambling within the state of Wyoming. The court said: "The principal question that confronts us, and one which we think is decisive of this case, is whether a court of equity has jurisdiction to afford the relief sought by the plaintiff. The jurisdiction of a court of equity, unless expressly made so by statute, is limited to the protection of rights of property. It has no jurisdiction over the prosecution of crimes. To assume such jurisdiction is to invade the domain of the courts of law, and both the executive and administrative departments of government. . . . The defendant is the prosecuting attorney of Sheridan County, charged with the duty of prosecuting within his county all infractions of the criminal laws of the state. . . . Criminal prosecutions are conducted in Wyoming in the name of the state. The prosecuting officer is the mere agent of the state, which is the real plaintiff in every criminal proceeding. We have therefore in this case the strange anomaly of a court of equity being asked to issue an order of injunction to restrain the state from exercising one of the highest prerogatives in the maintenance of government. Courts of equity possess no such power."
The above doctrine has previously been recognized by this court in the very criminal cause in question. Upon Hagen's appeal from the order of the district court denying his motion for a new trial on the ground of the loss of a portion of the stenographic notes, the decision was based on the proposition that the statutory grounds for a new trial were exclusive (Comp. Laws 1913, § 10,917), under the statute providing that new trials may be granted in certain, specified cases "only," but the court quoted with approval expressions of the supreme court of Nebraska (Hubbard v. State, 72 Neb. 62, 100 N.W. 153, 9 Ann. Cas. 1034), to the effect that equity would not interfere. The quotation follows: "We find no authority for saying the district court possesses the inherent or common law power to grant a new trial in a criminal *Page 649 
case outside of statutory authority as justice may demand. . . .A court of equity will not interfere for the purpose of granting a new trial in a criminal case." State v. Hagen, ante, 136, 208 N.W. at pp. 948 and 949.
Obviously, if a court of equity will not interfere for the purpose of granting a new trial, which is the main relief sought in the suit in question, it will not grant the incidental relief prayed, that of restraining the enforcement of a judgment which has become final. There can be no escape from the conclusion that the district court and the judge thereof were clearly without power or authority to issue said injunctional order.
The defendants herein urge that the writ should not issue because the parties to the action in question have other plain, speedy and adequate remedies in the ordinary course of law, in that if the complaint is defective for lack of jurisdiction or fails to state facts sufficient to constitute a cause of action, advantage of such defects should be taken by demurrer and an appeal from the order overruling the demurrer; and that the parties should move the district court to vacate its injunctional order, and from the denial of such motion an appeal to this court would lie. Such argument is palpably fallacious when applied to the remedies at law at the command of the state, for the officials named as defendants in the injunctional order are not the state. They are but the agents of the government of the state. The remedies suggested may be available to them, although, even as to them, the mere fact that an appeal would lie is not enough; the remedy must also be speedy and adequate. Whether they have a plain, speedy and adequate remedy in the usual course of law is a matter to be determined by the exercise of the sound discretion of this court applied to all the facts in each given case. See State ex rel. Dorgan v. Fisk, 15 N.D. 219, 107 N.W. 191; State ex rel. Red River Brick Corp. v. District Ct.24 N.D. 28, 138 N.W. 988; State ex rel. Lemke v. District Ct. 49 N.D. 27, 186 N.W. 381. It is quite apparent, however, that the state is not in a position to take advantage of the suggested remedies without divesting itself of its sovereign attribute of immunity to suit by its citizens, and submitting itself to the jurisdiction of the district court. In the proceeding before us, it is the state, not the officials named as defendants in the injunctional order, which is seeking the *Page 650 
writ of this court to prohibit said district court from assuming the jurisdiction to interfere with and impede the state in its administration of its criminal laws. Counsel has failed to point out any plain, speedy and adequate remedy in the ordinary course of law available to the state, as the party plaintiff in said criminal action. We know of no such remedy.
The questions raised are of public concern in which the state and each of its citizens have a vital interest. Upon the record presented, we entertain no doubt whatever of the propriety and legality of assuming original jurisdiction, nor of the duty of responsibility resting upon us to exercise the powers vested in this court through the constitution of this state.
It is well settled law in this state that this court has general superintending control over all inferior courts; (Const. § 86), that in the exercise of such superintending control it has power to issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction (Const. § 87, Comp. Laws 1913, § 7339; State ex rel. Lemke v. District Ct. supra, and cases therein cited.) It is unquestioned that a writ of prohibition under said general and supervisory jurisdiction of this court is the appropriate means which this court may employ to arrest and control the proceedings of said district court in the issue of its injunctional order. Comp. Laws 1913, § 8470; court in the issue of its injunctional order. Comp. Laws 1913, §§ 8470, 8471; State ex rel. Dorgan v. Fisk, supra; State ex rel. McDonald v. Hanley, 43 N.D. 388, 175 N.W. 569; State ex rel. Lemke v. District Ct. supra, and cases therein reviewed.
It is therefore ordered that said injunctional order be in all things vacated, set aside and annulled and that the peremptory writ of prohibition issue in accordance with the prayer of the petition, to be directed to said district court and to the judge thereof.
CHRISTIANSON, Ch. J., and BIRDZELL, and NUESSLE, JJ., and BURR, Dist. J., concur.
JOHNSON and BURKE, JJ., being disqualified, did not participate; Honorable THOS. H. PUGH, Judge of the Sixth Judicial District and Honorable A.G. BURR, Judge of the Second Judicial District, sitting in their stead. *Page 651