160 N.W.2d 101 (1968)
STARK COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,
v.
The STATE of North Dakota and Walter Christensen, State Treasurer of the State of North Dakota, Defendants and Appellants.
Civ. No. 8434.
Supreme Court of North Dakota.
April 18, 1968.
Rehearing Denied July 19, 1968.
*103 Freed, Dynes & Malloy, Dickinson, for plaintiff and respondent.
Helgi Johanneson, Atty. Gen., and Paul M. Sand and Myron E. Bothun, Asst. Attys. Gen., Bismarck, for defendants and appellants.
STRUTZ, Judge, on reassignment.
This is an action brought by Stark County, a public corporation, against the State of North Dakota for a balance which the County claims is due it from the Motor Vehicle Registration Fund of the State. The facts do not seem to be in dispute, the controversy being over the law as applied to the facts.
An examination of our laws discloses that a registration fee has been levied on motor vehicles in the State of North Dakota since 1911. Chap. 6, S.L.1911. Under that statute, the moneys received from motor-vehicle registrations were paid into the county treasuries for highway purposes, there being no State Highway Department until subsequent to that time. Thereafter, a Motor Vehicle Department was created in the State, and such motor-vehicle registration fees, after payment of necessary expenses, were paid into the State treasury and deposited to the credit of the State Highway Fund.
In 1933, the Legislature enacted a law which provided that, after payment of all salaries and other expenses, the moneys remaining from such motor-vehicle registrations should be transferred by the State Treasurer to the North Dakota Real Estate Bond Payment Fund. Chap. 160, Sec. 11, S.L.1933. This law was amended in 1935, S.L.1935, c. 177, to provide that moneys in the Motor Vehicle Registration Fund, in excess of the amount required to pay salaries and necessary expenses, be transferred by the State Treasurer by depositing fifty per cent of such balance to the credit of the State Highway Department and by distributing "50 per cent to the counties of the State of North Dakota," without any direction as to the basis for the transferring of such funds to the various counties of the State.
This law subsequently was amended in 1955, but the provision here under consideration remained unchanged and the moneys still were to be distributed: "3. Fifty percent to the counties of this state." Chap. 244, Sec. 5, S.L.1955.
In 1957, the Legislature again amended this law and provided for transferring such portion of the Motor Vehicle Registration Fund to the counties as follows:
"3. Fifty percent to the counties of this state in proportion to the number of certificates of title credited to each county. Each county shall be credited with *104 the certificates of title of all motor vehicles registered by residents of such county." Chap. 259, S.L.1957.
Under this amendment, the State Treasurer paid such fifty per cent to the various counties on the basis of the total amount of registration fees received from each county. This allocation was made pursuant to an Attorney General's opinion written on August 19, 1957, shortly after the 1957 law went into effect. In such opinion, the Attorney General's office advised the Motor Vehicle Registrar:
"* * * distribution under this provision of law can and properly should be made on the basis of motor vehicle collections in each county as your present distribution is made."
The statute again was amended in 1959, but the provision for distribution to the counties was not changed from the provision as found in the 1957 law. Chap. 289, S.L.1959.
When the 1959 law became effective, the Attorney General's office again advised, on July 21, 1959, that distribution under the provisions of the Act was to be made
"* * * on the basis of motor vehicle collections in each county."
In 1961, a new administration took over the government of the State of North Dakota, and the above law was re-examined. Instead of allocating such moneys to the counties on the basis of the amount of money collected from each county, the distribution thereafter was made strictly on the basis of the number of vehicles registered from each county. For example, if 10,000 vehicles were registered from County A in a given year and the registration fees for such vehicles totaled $100,000, and 10,000 vehicles were also registered from County B during the same period paying a total registration fee of $200,000, the amount to be distributed to each of these two counties would be the same because the number of cars registered from each county was the same, although the amount collected from County B was twice the amount collected from County A.
On these facts, Stark County brought this action against the State of North Dakota to recover some $18,000 which is the amount of difference in the allocation of the Motor Vehicle Registration Fund to Stark County between what it actually did receive when such distribution was made on the basis of the amount collected in each county and what it would have received had the distribution been made on the basis of the number of motor vehicles registered from that county. The plaintiff's claim in this action covers the years 1957 through 1960.
The action was commenced on December 14, 1965. The trial court denied recovery for any amounts on distributions made more than six years before the commencement of the action, on the ground that any deficiency in the payment made to the plaintiff prior to December 14, 1959, would be barred by our six-year statute of limitations. This ruling limited the plaintiff's recovery to the difference in the amount it would have received on registrations made between December 14, 1959, and the time the new method of distribution was adopted, in January 1961, which made such distribution on a per-car basis instead of on a basis of the amount collected in each county.
From the judgment entered in favor of the plaintiff for $3,130.06 and costs, the defendant has appealed to this court, claiming that the trial court erred in permitting the plaintiff to recover in any amount. The plaintiff has cross-appealed, contending that the trial court erred in holding that the plaintiff's recovery for the years prior to December 14, 1959, was barred by the statute of limitations.
The plaintiff did not contend nor did it try to show that the State in any way benefited from the alleged erroneous distribution which it made of motor-vehicle registration moneys prior to 1961. The basis of the plaintiff's claim is that, because of the improper distribution made by the State, *105 some counties were paid too little and some counties were paid too much during the period in question. The plaintiff contends that the State is responsible to those counties which received too little under the improper method of distribution.
The first question for us to determine on this appeal is whether the State is liable at all, assuming that the distribution of the Motor Vehicle Registration Fund to the counties was made on an improper basis prior to 1961. It has generally been held that any power to create a liability on the State treasury must be derived from specific statutes, and courts have no inherent power to create such liability. 81 C.J.S. States § 128, p. 1134.
Consent to be sued may be expressed in the State's Constitution, but such provisions generally are held not to be self-executing and no suit may be maintained until the Legislature provides therefor. 81 C.J.S. States § 215-a, p. 1304.
We find that Section 22 of the North Dakota Constitution provides that suits may be brought against the State in such manner and in such courts and in such cases as the Legislative Assembly may, by law, direct.
Section 32-12-02, North Dakota Century Code, provides that an action respecting title to property or arising upon contract may be brought in the district court against the State. By this section, the State of North Dakota has consented that it may be sued in cases "arising upon contract," and this section has been held to include implied as well as express contracts. Little v. Burleigh County (N.D.), 82 N.W. 2d 603.
We have held that any suit not within the express provision of this statute may not be brought against the State of North Dakota. State ex rel. Shafer v. Lowe, 54 N.D. 637, 210 N.W. 501.
Did the statute providing for the distribution of a part of the motor-vehicle registration moneys amount to a contract between the State and Stark County?
The statute clearly does not create an express contract. The State, in an attempt to assist the counties, which are creatures of the Constitution (N.Dak. Constitution, Secs. 130, 166-173, 175), provided that a portion of the motor-vehicle registration moneys be returned to the counties for highway purposes. The State could have kept all of such moneys, as indeed it has done at times in the past. So if we are to find a contract here, it must be as contended by the plaintiffa quasi contract or a contract implied in law.
A quasi contract arises where a transaction between parties gives them mutual rights or obligations, but does not involve a specific agreement between them. Such contracts are obligations created by law for reasons of justice. Receipt of benefits, which it would be inequitable to retain without paying therefor, constitutes the essence of quasi-contractual obligations. 17 C.J.S. Contracts § 6, p. 566; St. John's First Lutheran Church in Milbank v. Storsteen, 77 S.D. 33, 84 N.W.2d 725; Mahan v. Mahan, 80 S.D. 211, 121 N.W.2d 367.
We hold that there is no quasi contract here. There are no mutual rights or obligations, and the plaintiff has made no showing that the State has received any benefits which it would be inequitable for it to retain. In fact, it is conceded that the State has distributed all of the motor-vehicle funds which were due the counties. The only contention on the part of the plaintiff is that the State distributed such funds on an improper basis.
So if there is any liability on the part of the State, it must be on the basis of an implied contract. This court has held that the main difference between an express contract and an implied contract is that in the case of an express contract parties arrive at their agreement in clear and positive words, either oral or written; while in the case of an implied contract *106 their agreement is arrived at by considering their acts and conduct, where they have failed to articulate their promises. Bismarck Hospital Association v. Burleigh County (N.D.), 146 N.W.2d 887.
Where the contract is found to be implied in fact, the court merely tries to determine what the parties actually intended. 17 C. J.S. Contracts § 4-b, p. 557.
Had the State, in the case before us, retained a part of the money due the plaintiff, the plaintiff no doubt would be empowered to bring an appropriate action to collect the moneys so withheld. But here it is conceded that the State retains no part of such funds. The ground on which the plaintiff claims it is entitled to recover from the State is that the State, on the advice of its Attorney General, made distribution of such moneys on an improper basis.
The plaintiff cites a number of cases in support of its right to bring this action on the basis of an implied contract. It cites Moll v. Wayne County, 332 Mich. 274, 50 N.W.2d 881, in which the plaintiff sued for a return to him of a portion of his salary as circuit judge which he had voluntarily turned back to the county treasurer from January 1933 to July 1935 because of the financial straits of the county during the depression years. The plaintiff's suit was based upon an implied contract. The Michigan Supreme Court held that the plaintiff's claim was outlawed by the six-year statute of limitations because the plaintiff's demand for return of this money was not made until ten years after it had been paid to the county. The court further held that, in any event, the plaintiff had made no showing that the defendant had assumed an obligation to repay the plaintiff and that nothing appeared in the record from which it could be said that it would be inequitable to permit the defendant to retain the money or that the repayment of such sum to the plaintiff was necessary in order to enable justice to be accomplished.
We fail to see how this case in any way supports the plaintiff's position in the case at bar. Here, there is absolutely no showing that the defendant had assumed an obligation to pay the plaintiff the sum sued for. There is nothing in the record from which it can be said that it would be inequitable to find for the State, because the State does not retain any part of the moneys which the plaintiff is claiming in this action.
The plaintiff also cites the case of Ford Motor Co. v. State, 59 N.D. 792, 231 N.W. 883, in which Ford Motor Company sued the State of North Dakota for moneys had and received by the State for taxes which were paid by the plaintiff in excess of the amount of taxes which actually were due under the law. In that case, this court held that an action against the State for moneys had and received, to recover such excessive taxes, is an action "arising upon contract" within the provisions of our statute. We fail to see that this case is of any assistance to the plaintiff, for in the Ford case the State of North Dakota admittedly had been paid tax moneys in excess of the amount due and the State was retaining such moneys and was benefiting from such excess payments.
The plaintiff also cites G. T. Fogle & Co. v. United States, 135 F.2d 117. In that case, the United States had contracted with the plaintiff for rental of certain road- and street-construction equipment. The contract provided that payment was to be made on the basis of use of the equipment. Plaintiff thereupon spent certain sums making the equipment available for defendant's use, but the defendant thereafter failed to use it. The theory of plaintiff's suit was that it was entitled to be paid for expenses incurred in carrying out its part of the agreement, on the theory of implied contract. The court, however, held that the plaintiff could not recover on implied contract where the equipment admittedly was not used by the defendant and where the agreement between the parties specifically *107 provided that payment was to be made entirely upon defendant's use of the property. That case clearly does not support the plaintiff's proposition in the action before us, except that the court did indicate that, under proper circumstances, an action on implied contract would lie.
In every case cited by the plaintiff in which the plaintiff was allowed to recover or to bring an action against the State or a public corporation on the theory of implied contract, the State or the public corporation being sued had benefited by reason of such implied contract.
The case of State v. City of Milwaukee, 145 Wis. 131, 129 N.W. 1101, is of interest in this connection. In that case, the State of Wisconsin brought an action against the City of Milwaukee and the County of Milwaukee to recover moneys which the County and the City had collected as fines for the violation of penal laws of the State, which fines, under the Constitution and the statutes of Wisconsin, were to be paid to the State. In the trial of the action, the State failed to prove that such moneys had been used by the County and the City for county and city purposes. The Wisconsin Supreme Court held that, in the absence of a showing that the defendants had used the moneys for county and city purposes, the State could not recover.
In the case before us, there is no showing that the State has used or has retained any part of the moneys which the County of Stark is seeking to recover. In fact, it is conceded that such moneys as are claimed by the plaintiff have been paid to other counties under the improper method of allocating the motor-vehicle registration funds to the various counties. Under this situation, the State of North Dakota is not liable to Stark County for any moneys which it has paid to other counties, even though such distribution was, perhaps, improper.
Since we hold that the State is not liable to the plaintiff in this case in any amount, other issues which were raised by the parties on this appeal, such as laches and statute of limitations, need not be considered.
For reasons stated herein, the judgment of the trial court is reversed and the complaint is dismissed.
TEIGEN, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.