Dennis SAMUELS, Plaintiff and Appellant,

v.

WHITE SHIELD PUBLIC SCHOOL DISTRICT NO. 85, a public corporation, Defendant and Appellee.

Civ. No. 9762.

Supreme Court of North Dakota.

Oct. 6, 1980.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Freed, Dynes, Malloy & Reichert, Dickinson, for defendant and appellee; argued by Ronald A. Reichert, Dickinson.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiff, Dennis Samuels, from the summary judgment of the McLean County District Court, entered December 28, 1979, dismissing with prejudice Samuels' action against the defendant, White Shield Public School District No. 85 (hereinafter School District). We reverse and remand for a trial on the merits.

Samuels held a teaching position with the School District during the 1977–78 school year. Prior to April 15, 1978, Samuels received written notice of nonrenewal of his contract, and a hearing was held on April 6, 1978, which culminated with the School District confirming its decision to nonrenew Samuels' contract. On April 27, 1978, Samuels sent the School District a letter stating that he accepted the offer of reemployment arising under the provisions of Section 15- 47-27 N.D.C.C., and on May 10, 1978, he received a letter from the School District informing him that his contract would not be renewed for the 1978- 1979 school year. On September 11, 1978, Samuels commenced an action for damages against the School District alleging that his contract had been wrongfully nonrenewed by the School District's failure to comply with the statutory requirements for nonrenewal of a teacher's contract. Upon motion of the School District, the district court entered a summary judgment on December 28, 1979, dismissing Samuels' action with prejudice on the ground that Samuels had failed to request the equitable relief of reinstatement and was therefore precluded from bringing an action for damages. The district court reasoned that because Samuels failed to bring his action prior to the commencement of the school year the court could not order his reinstatement, and, as a consequence, Samuels should be precluded from bringing an action for damages.

In his appeal from the summary judgment, Samuels has raised the following issues:

(1) Whether or not the district court erred in granting a summary judgment dismissing Samuels' action on the ground that a teacher, alleging wrongful nonrenewal of his contract, is precluded from bringing an action for damages unless he first seeks the equitable relief of reinstatement?

(2) Whether or not the district court improperly taxed certain costs against Samuels?

■ On more than one occasion this Court has held that there are circumstances under which a wrongfully nonrenewed teacher may be entitled to the equitable relief of mandamus compelling reinstatement of his teaching position. *Baker v. Minot Public School District No. 1*, 253 N.W.2d 444 (N.D.1977); *Henley v. Fingal Public School District No. 54*, 219 N.W.2d 106 (N.D.1974).

In *Baker* the school board asserted that a teacher, alleging wrongful nonrenewal,

should only be allowed the remedy of damages and should not be allowed to seek reinstatement. This Court disagreed, concluding that under certain circumstances the teacher should not be limited to a recovery of compensatory damages but should be entitled to seek and obtain equitable relief compelling the school board to reinstate the teacher's contract. In so concluding, this Court cited circumstances under which a teacher may be entitled to reinstatement:

"We recognize that there will be instances in which the traditional rationale supporting the refusal of courts of equity to enforce personal service contracts will exist, and the forcing of a school board to rehire a teacher or to renew the contract of a teacher would not be for the best interests of a school district; but in the instant case, where the school year has not yet commenced, where a position is open within the school board's school system for which position a wrongfully dismissed teacher is qualified, where the school district is one that is large enough to absorb the dismissed teacher into its system without creating a disruptive situation, where there is no showing that friction exists between the wrongfully dismissed teacher and his administrators, and where the wrongfully dismissed teacher has a good record as a teacher ·it is proper for the district court to require a school board to offer a teaching position to the wrongfully dismissed teacher in cases in which the district court determines that it would be in the best interests of the wrongfully dismissed teacher and the school district." 253 N.W.2d at 451-52.

This Court has also held that a wrongfully nonrenewed teacher may be entitled to compensatory damages. *Selland v. Fargo Public School District No. 1*, 285 N.W.2d 567 (N.D.1979); *Pollock v. McKenzie County Public School District No. 1*, 221 N.W.2d 521 (N.D.1974).

However this Court has never held that a teacher, alleging wrongful nonrenewal, must seek equitable relief of reinstatement and that his failure to do so will preclude him from receiving relief by way of damages.

In the instant case the trial court, upon construing this Court's decision in the recent case of *Dobervich v. Central Cass Public School District No. 17*, 283 N.W.2d 187 (N.D.1979), concluded that a teacher alleging wrongful nonrenewal is precluded from bringing an action for damages if the teacher has sufficient time to bring a suit in equity to compel reinstatement of his teaching contract but fails to do so. It was not our intent in *Dobervich* to require such a result.

In *Dobervich*, a teacher, alleging wrongful nonrenewal of his contract for the ensuing school year, brought an action seeking to restrain the school board from hiring another teacher to fill his position and to compel the school board to issue him a renewed contract, and, in the alternative, for damages. The teacher was awarded a jury trial, and upon the jury verdict, he was awarded a judgment for damages in the amount of $10,000.00. The school board appealed, and on appeal the issue determined by this Court was whether or not Dobervich was entitled to a jury trial. This Court, holding that Dobervich was not entitled to a jury trial, reversed the judgment and remanded for preparation of findings of fact and conclusions of law by the trial court. We determined that Dobervich was not entitled to a jury trial because the school board's determination to nonrenew his contract was not subject to being set aside by a jury substituting its judgment for that of the board. The issue of whether or not the school board had failed to comply with Sections 15 47-38, N.D.C.C., and 15-47-27, N.D.C.C., in nonrenewing Dobervich's contract presented only questions of law and of statutory interpretation for the trial court to decide. The question of whether or not a teacher, alleging wrongful nonrenewal, must seek reinstatement or else be precluded from seeking damages was not presented to this Court in *Dobervich*; thus, our opinion in that case should not be construed to foreclose a teacher's right to bring an action for damages for

wrongful nonrenewal in the absence of a request for reinstatement. It is our view that our law does not foreclose a teacher from so doing.

A request for summary judgment should be granted only if, after reviewing the evidence most favorably to the party against whom summary judgment is sought, it appears that there is no genuine issue of material fact and that the party seeking summary judgment is entitled to it as a matter of law. Rule 56, North Dakota Rules of Civil Procedure; *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977). We conclude that the district court erred in its determination that Samuels was precluded from bringing an action for damages by his failure to seek the equitable relief of reinstatement. Consequently, we hold that the School District was not entitled to judgment as a matter of law and that the district court erred in granting the School District's request for a summary judgment.

Upon remanding this case for a determination on the merits, we believe it is necessary to address the assertion made by Samuels on appeal that the decisions of this Court subsequent to *Baker* involving teacher nonrenewal actions, have left unclear which party has the burden of proof in such actions.

In *Baker* this Court recognized that the legislature has imposed certain procedural and substantive requirements upon a school board in nonrenewing a teacher's contract for the ensuing school year. Pursuant to Section 15–47–38(5), N.D.C.C., a teacher is entitled to written notice of the contemplated nonrenewal, of the reasons for such nonrenewal, and of the time and place at which a special school board meeting will be held for discussion of and action upon the contemplated nonrenewal. Although both the teacher and the school board "may" produce witnesses to confirm or refute the reasons given for nonrenewal, this Court held in *Rolland v. Grand Forks Public School District No. 1*, 279 N.W.2d 889 (N.D.1979), that the legislature intentionally avoided placing an evidentiary burden of proof upon the school

board to prove justification for its contemplated nonrenewal. At the close of the special school board meeting, if the school board decides to follow through with its contemplated nonrenewal it must "confirm" its decision by a vote to nonrenew. *Rolland v. Grand Forks Public School District No. 1*, 279 N.W.2d at 893. However, the school board need not introduce testimony or other evidence in support of its decision to nonrenew because the law does not place an evidentiary burden upon the school board to justify its nonrenewal determination. Rather, the teacher, who brings an action against the school board alleging wrongful nonrenewal, has the burden in such action to prove that the nonrenewal was not accomplished in compliance with the requirements of Sections 15-47-38, N.D.C.C., and 15-47-27, N.D.C.C.

As this Court has stated in *Selland v. Fargo Public School District No. 1*, 285 N.W.2d 567 (N.D.1979),

"A school board's decision not to renew a teacher's contract is no longer a discretionary act. Rather, it is an act subject to the requirements of Section 15–47–38, N.D.C.C. *Baker v. Minot Public School District No. 1, supra*." 285 N.W.2d at 574.

Among such requirements is the provision that the school board's reasons for nonrenewal must not be "frivolous or arbitrary." Also, the school board must be able to articulate a reason for nonrenewal which relates to the ability, competence, or qualifications of the teacher as a teacher or to the needs of the district. *Rolland v. Grand Forks Public School District No. 1*, 279 N.W.2d 889, 894, note 7 (N.D.1979); *Dathe v. Wildrose School District No. 91*, 217 N.W.2d 781 (N.D.1974).

Samuels' assertion that the decisions following *Baker, supra*, do not clearly interpret the standards to be applied in teacher nonrenewal actions is simply unsupported by a fair interpretation of those decisions. If a need exists to change the requirements for nonrenewal of teachers' contracts, such change must be made by the legislature and not this Court.

Samuels has also asserted that certain costs should not have been taxed against him. Although Samuels filed an objection to the clerk of court's retaxation of costs, he failed to file a notice of appeal from the clerk's action to the district court under Rule 54(e), N.D.R.Civ.P., or to otherwise secure, by motion under Section 28-26–16, N.D.C.C., a review in the district court of the clerk's action in taxing costs. Under such circumstances, Samuels would not ordinarily be entitled to a review of the taxation of costs by this Court on appeal. *Curns v. Martin*, 193 N.W.2d 214 (N.D. 1971); *Schue v. Jacoby*, 162 N.W.2d 377 (N.D.1968). However, as we have set aside the judgment, the costs taxed in conjunction with that judgment must also be set aside.

For the reasons stated in this opinion, the summary judgment is reversed, the award of costs is set aside, and the case is remanded for trial on the merits.

SAND, PAULSON and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the opinion written by the Chief Justice. However, I write to add my own thoughts to the Chief Justice's statement that "If a need exists to change the requirements for nonrenewal of teachers' contracts, such change must be made by the legislature and not this Court."

A review of the opinions written by this court, many of which are cited in the opinion written for the court by the Chief Justice, immediately reveals the controversy which has resulted from the enactment of the statutes governing this matter. Although those statutes provide no *appeal* from a decision of a school board to not renew a teacher's contract, this has not prevented a teacher wishing to challenge the decision of the school board from obtaining a review of that decision in the courts. Where the challenge is based on a procedural irregularity the only issue has

been the construction of the applicable statutes. Here, the challenge is based on that portion of Section 15–47-38(2), N.D.C.C., which requires that the reasons given by the school board for the nonrenewal of a teacher's contract must "be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary." That allegation necessarily raises more than a procedural matter. It involves to a considerable degree the discretionary powers of the school board. The board's discretion is, however, not unlimited. The school board's determination that the reasons given by it for the nonrenewal of a teacher's contract are sufficient to justify its action and are not frivolous or arbitrary does not foreclose a further review of that matter. On the other hand, that review should not permit another body to substitute its judgment and discretion for that of the school board. The question of whether or not a school board complied with our statutes in determining the reasons assigned by it for the nonrenewal of a teacher's contract is a question of law rather than a question of fact.

In *Baker* this court recognized that the determination of the school board to not renew a teacher's contract was not conclusive but was subject to review by the courts. Because the trial court sat without a jury in that case the issue of whether the reasons given by the school board for nonrenewal complied with our statutes was a question of law for the court or a question of fact for the jury was not a direct issue and was not answered by this court. However, in *Dobervich* a jury trial had been demanded by the teacher. Because we realized the review of the decision of the school board in assigning reasons for nonrenewal of the teacher's contract involved a question of law rather than a question of fact, and because a jury might very well substitute its judgment for that of the school board, we held in *Dobervich* there was no right to a jury trial on this issue. We further indicated that a court, on review, must exercise restraint and should not substitute its judgment for that of the

school board.[1] In this respect *Dobervich* establishes a basis for review which is akin to that provided by statute in South Dakota. See *Busker v. Board of Ed. of Elk Point*, 295 N.W.2d 1 (S.D.1980).

The issue in this appeal is whether damages is an available remedy to Samuels or whether he is limited to a remedy requiring the school board to reinstate him if the board is found to have improperly refused to renew Samuels's contract. Inherent in this issue, as delineated by counsel for the school board at oral argument, is the question of the effect on the school district if an action to review the decision of the school board is not filed until after the school board has hired a new teacher and the ensuing school term has already begun. It is not inconceivable that a school board, in good faith, may have thought its reasons justified its refusal to renew a teacher's contract only to have a court find, as a matter of law, the reasons inadequate to meet the requirements set forth in Section 15–47–38(2), N.D.C.C. *Baker* may well represent such a situation. If, however, a teacher waits to institute his action to review the decision of the school board until it is too late for the board to reverse its action in the face of a court decision finding it acted improperly, damages appears to be the only available remedy. In fact, such a procedure leaves the choice of remedy to the teacher. Perhaps this seems justified because the court has, although after the fact, ruled that the school board has improperly refused to renew the teacher's contract. For a school board which believes it acted in good faith and within the purview of the statute this may have serious financial repercussions.

In *Baker* it was the school district which argued that Baker's only available remedy was damages and the teacher who argued that reinstatement was the proper remedy. In *Baker* the teacher instituted action prior to the beginning of the ensuing school year and the trial court's decision was issued prior to the beginning of the school year. This court held that although damages was the traditional remedy for breach of personal service contracts, it was proper for the district court to require the school board to offer a teaching position to the wrongfully dismissed teacher under the circumstances outlined therein.

Here, Samuels did not institute action until after the school district had hired another teacher and the school term had begun. Here, it is the school district which is arguing that reinstatement should be the proper remedy and it is the teacher who is arguing that damages is the appropriate remedy. At least a portion of Samuels's argument is that reinstatement would not be a satisfactory remedy because the school district is small, he could not be absorbed into the system without creating a disruptive situation, and there is existing friction between himself and the administrators. These are all factors which were not present in *Baker* and the absence of these factors was persuasive in this court's determination to sustain the trial court's decision to order reinstatement in *Baker*.

Our procedure governing this matter has been established by court decision, on a case-by case basis, and it appears to me that under the procedure specified in those previous cases both Samuels and the school district have considerable merit to their arguments. As reflected by the decision of the South Dakota Court in *Busker, supra,* the South Dakota procedure, in those instances in which a school board determines to not renew a teacher's contract, is similar to that of our State.[2] There is one area in which the South Dakota statutes contain significant provisions which ours do not. In South Dakota the procedure for an appeal from a decision of the school board to not renew the teacher's contract is statutory. Sec. 13–46–6, S.D.C.L. The procedure in-

---

1. Counsel for Samuels stated in oral argument that it was not his intent that the court should become a "super" school board and that it is a question of law whether or not the facts before the school board justify the board in refusing to renew a teacher's contract.

2. Compare Section 15–47–38, N.D.C.C., Sections 13–43–9.1 through 13–43–10.1, S.D.C.L.

corporates not only the time within which an appeal may be taken (ninety days) but also establishes the standard of review upon appeal. Sec. 1–26–36, S.D.C.L.[3] That review is similar to that provided in North Dakota for review of administrative agency decisions. See Sec. 28–32–19, N.D.C.C. Because in South Dakota the appeal is from a decision to not renew a teacher's contract, I presume a reversal of the school board's decision on appeal would result in reinstatement of the teacher's contract.

Whether or not our Legislature enacts similar legislation or legislation providing for different remedies is, for the moment, immaterial. What is material is that the Legislature, having decided to provide North Dakota teachers with certain protections by enacting statutes regulating the manner in which a school board may refuse to renew a teacher's contract, should also specify by legislation the procedures available to a teacher who believes a school board has not adhered to those provisions. Such legislation, if enacted, would serve as notice to teachers and school boards alike of their rights, obligations, and remedies in these matters. Legislation which prescribes the procedure prior to legal action would better serve teachers and school boards than will opinions of this court which, by necessity, are issued after the fact on a case–by–case basis.

The procedure and remedies available in these matters have heretofore been made less than clear, either in the statutes or our opinions. It would be unfair to deny Samuels relief should the reasons given by the school board for its decision to refuse to renew his contract not comply with the statutes. For this reason I agree that the summary judgment should be reversed and the case remanded to the trial court for a review on the merits. Should that review result in a determination that the school board's decision was not in compliance with the statutes, I believe the district court may then consider all the factors presented by

Samuels and the school board in determining the relief to which Samuels would be entitled, including but not limited to the time Samuels commenced his action.

PEDERSON, Justice, dissenting.

Although I agree with much that is said by Chief Justice Erickstad and Justice Vande Walle, I do not agree with the conclusion. This court misleads litigants when it provides admittedly inadequate "band–aid" type remedies when major legislative surgery is required.

The scope of the judicial review of a noncontractual administrative determination made by a school board, which is available to a teacher claiming to be aggrieved by that determination, seems to be a dark mystery both in North Dakota and elsewhere. It serves no good purpose to point fingers ·the teachers are hurting for sure, but so are the school boards and the judicial system. All have to admit to some fumbling. I read *Dobervich v. Cent. Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187 (N.D. 1979), as distinguishing breach of contract suits from nonrenewal suits, but it is evident that the majority of this court does not read it that way. Until there is some understanding at a slightly higher plane than has been heretofore displayed, there is no reason to expect that relief can be forthcoming.

It is my position that the courts cannot provide the remedy. To that extent I agree with the concurring opinion of Justice Vande Walle. Nevertheless, to remand for a consideration on the merits is not warranted. The issue goes beyond the abolishment of the distinction between law and equity, Rules 1, 2 and 3, NDRCivP, and liberal interpretation of pleadings. All of the facts necessary are in the record—we can make the decision as well as the trial court.

---

**3.** Although South Dakota's procedure governing an appeal by a teacher from the decision of the school board refusing to renew the contract appears to be clear, the application of the standard of review on appeal apparently still causes difficulty as applied to the facts. See *Schnabel v. Alcester School Dist. No. 61–1*, 295 N.W.2d 340 (S.D.1980).

Time constraints and judicial workload prevent an exhaustive research analysis of the matter, but it is basic to jurisprudence in general and the laws of this state that suits against the state, or any of its arms, must be by consent of the legislative assembly. See § 22, North Dakota Constitution; *Wirtz v. Nestos*, 51 N.D. 603, 200 N.W. 524 (1924); *State v. Lowe*, 54 N.D. 637, 210 N.W. 501 (1926); *Watland v. North Dakota Workmen's Comp. Bureau*, 58 N.D. 303, 225 N.W. 812 (1929); 81A C.J.S. States § 300. Further insight into the problem can be garnered from Davis, Administrative Law Treatise, 2d Ed. Supp. (Unreviewable Administrative Actions).

" . . . in the absence of a legislative expression indicating a purpose to subject administrative or executive judgment to judicial review or control, the officers in question were not subject to suit." *Watland v. North Dakota Workmen's Comp. Bureau*, 225 N.W. at 814.

"Express authority given claimants to prosecute appeals to the courts, in certain instances where claims have been denied, is not a consent to suit." *Watland v. North Dakota Workmen's Comp. Bureau*, Syllabus 3, 225 N.W. at 812.

Actions "respecting the title to property, or arising upon contract" are authorized by § 32–12–02, NDCC. This applies to the arms of the state, *Little v. Burleigh County*, 82 N.W.2d 603 (N.D.1957), and to implied as well as express contracts, *Stark County v. State*, 160 N.W.2d 101 (N.D.1968).

"Any power to create a liability against the State must be derived from specific statutes. Courts have no inherent power to create such liability." *Stark County v. State*, Syllabus 1, 160 N.W.2d at 102.

The interest of a teacher under §§ 15–47-38 and 15–47–27, NDCC, often referred to as "a continuing contract," is not a contract right, either express or implied. See discussion in *Dobervich, supra*, and *Bottineau Public Sch. Dist. # 1 v. Currie*, 259 N.W.2d 650, 654 (N.D.1977). Samuels has not argued that § 32–12–02, NDCC, authorizes this suit. If nonrenewal were a breach–of–contract matter, under *Henley v. Fingal*

*Public School District # 54*, 219 N.W.2d 106 (N.D.1974), Samuels would be entitled, apparently, to specific performance and he might also be entitled to an injunction pursuant to § 32–05–05(5), and Chapter 32–06, NDCC. Another remedy available might be declaratory judgment, Chapter 32–23, NDCC.

If there is a claim of tort or negligence, apparently a damage suit remedy is available against subdivisions of the State of North Dakota pursuant to *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974). Samuels' complaint fails to make a claim within that authority.

The Legislature, in §§ 32–33–01, 32–34–01, and 32-35–01, NDCC, authorizes writs of certiorari, mandamus and prohibition against arms of the state. Samuels seeks none of those remedies in his complaint. If he had, the trial court would know that arbitrary action must be alleged and proved before the school board's decision could be set aside. And this court would know its scope of review.

Even though "no one should suffer by the act of another," § 31–11–05(11), NDCC, and "for every wrong there is a remedy," § 31 -11 -05(14), NDCC, the general rule is that:

"It is well settled that for every right or wrong there is a legal remedy, except in the case of the rights of an individual against a state . . . ." 1 C.J.S. Actions § 4a.

The record before us contains evidence that Samuels was not punctual in attendance and that this was the basis of his nonrenewal. There is also evidence that Samuels' morals did not meet the standards of the community. Without substituting its judgment for that of the school board, but giving some "deference" to the school board, the trial court will find it difficult to conclude that either, or both, of the above grounds fail, as a matter of law, to be sufficient to support the nonrenewal. I presume that the definition of good faith in § 1–01–21, NDCC, would apply if Samuels contends that good faith was lacking. Teachers are required by state law to teach

temperance and morals, §§ 15–38–05 and 15–38–10, NDCC. A teacher who is tardy on any regular basis should not expect renewal, even after reading *Baker v. Minot Public School Dist. No. 1*, 253 N.W.2d 444 (N.D.1977).

In my opinion the trial court was entirely correct in pointing out that the only claim for damage available is incidental to a writ of mandamus as indicated in § 32–34–06, NDCC, and as pointed out in *Dobervich, supra*.

The judgment should be affirmed.