Charles **HENLEY**, Plaintiff and Appellant,

v.

**FINGAL PUBLIC SCHOOL DISTRICT**
**# 54, Defendant and Appellee.**

**Civ. No. 8971.**

Supreme Court of North Dakota.

June 4, 1974.

Rausch & Chapman, Bismarck, for plaintiff-appellant.

Conmy, Conmy, Rosenberg, Lucas & Olson, Bismarck, for defendant-appellee.

EUGENE A. BURDICK, District Judge.

By summons and complaint dated 28 August 1972 and served upon the respondents on 6 September 1972, Charles Henley, the plaintiff, brought this action to enjoin the respondents from hiring a third person to replace him and to require the respondents to issue a contract for him to teach in the Fingal Public School for the 1972–1973 school year, or, in the alternative, to recover damages for the amount of his contract and for other damages resulting from the alleged wrongful refusal to issue a teaching contract to him.

After the respondents served their answer to the complaint, they moved for a summary judgment of dismissal of the action, which the trial court granted. The appellant perfected this appeal from the summary judgment.

The facts of this case are uncontroverted and were developed for the record largely by the affidavit of Ray Kreidlkamp, chairman of respondent Fingal Public School District #54, given in support of its motion for a summary judgment.

Henley is a teacher who contracted with respondent school district to teach mathematics in the Fingal Public School for the school year 1969–1970. His teaching contract was renewed for the school years 1970–1971 and 1971–1972.

Because of the prospect of substantial loss of revenues for the 1972–1973 school year, the school board decided to eliminate a number of individual teaching assignments, combine certain grades, and require some teachers to teach in more than one field of preparation. The school board held a special meeting on 21 March 1972 at which "The school board then moved to inform Mr. Henley that he would not be offered a contract for the coming school year, which would be the 1972–1973 school year." However, minutes of this meeting contain no reference to Henley.

On the following day, 22 March 1972, Kreidlkamp sent the following letter to Henley:

"I'm sure that by now you have heard about the financial loss the Fingal School will suffer this coming year. Because of this loss in revenue the school board has the unpleasant task of bringing the program down to what revenue will be available next year. Unfortunately the cut has to involve some teaching positions because of certain major and minor combinations needed under the new program.

"It is with regret that we have to inform you at this time that you will not be offered a contract for the next school

year, and that your present contract will terminate at the end of this school year.

"Mr. Sloan will receive any questions you may have and a hearing with the board of education will be granted upon your request.

"The school board and Mr. Sloan thank you for your services and wish you the best luck in seeking another position."

On 17 April 1972 Henley sent the following letter to Kreidlkamp:

"Not having received a contract for the 1972–73 school year, I hereby accept your offer for re-employment, pursuant to Section 15–47–27 of the North Dakota Century Code."

On 13 June 1972 Kreidlkamp sent the following letter to Henley:

"This Correspondence is to clarify the fact that you have *not* been and are not being offered a contract for the coming school year 1972–73. This is reference to the letter you received March 22, 1972."

■ Under the law of this State, "an injunction cannot be granted . . . to prevent the breach of a contract, the performance of which could not be specifically enforced." Section 32–05–05, N.D.C.C.; Mevorah v. Goodman, 65 N.W.2d 278 (N.D.1954). Also, under the law of this State, "an obligation to render personal service" and "an obligation to employ another in personal service" "cannot be enforced specifically." Section 32–04–12, N.D.C.C. Accordingly, the remedy of injunction is not available to the appellant in this action.

But, the appellant also pleads a duty of the respondents to issue a formal contract for the renewal of his continuing contract. While the complaint of the appellant is not in form a petition for a writ of mandamus, the action seeks essentially the same relief. We shall examine the rights and obligations of the parties in the light of relief that could have been granted by the trial court.

The writ of mandamus will lie "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is precluded unlawfully by such inferior tribunal, corporation, board, or person." Section 32–34–01, N.D.C.C.

Section 15–47–27, N.D.C.C., reads as follows:

"15–47–27. Time for renewal of teachers' contracts.—Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, either by the action or non-action of the school board or the director of institutions, on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the

ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier. Failure on the part of the teacher to provide such notification shall relieve the school board or the director of institutions of the continuing contract provision of sections 15-47-26 through 15-47-28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause." N.D.C.C.

Applying Section 15-47-27, N.D.C.C., to the foregoing facts, it is clear that unless his "continuing contract" was terminated, Henley became "entitled to the usual written contract for the ensuing school year." Inasmuch as his right to teach was disputed by the chairman of the school board by letter dated 13 June 1972, the writ of mandamus would be the remedy "to compel the admission of 'the appellant' to the use and enjoyment of a right . . . to which he is entitled and from which he is precluded unlawfully by . . . such board, or person". In addition, of course, the appellant would be entitled to compensation in damages for breach of his "continuing contract" where the remedial writ of mandamus can no longer be issued in time to avoid compensatory damages.

We shall now examine Sections 15-47-27 and 15-47-38, N.D.C.C., the two pertinent statutes, to determine whether appellant's "continuing contract" was terminated. While these statutes are arguably inconsistent with respect to chronology of certain events, it is our duty to construe them in such a way as to give effect to the provisions of each if that can be done without doing violence to clear language. Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516 (1952).

Section 15-47-27, N.D.C.C., was the earlier enactment, having been enacted as S. L.1947, Ch. 146, Sections 2 and 3, and revised in 1955, 1959, 1961, and 1971. The 1961 version was recently considered by this Court in Huso v. Bismarck, Public School Board, 219 N.W.2d 100 (N.D.1974). Failure to give required notice "shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year." Under this section, the teacher must also indicate his acceptance of the proffered re-employment before the 15th of May if the offer of employment is by the nonaction of the school district or the teacher will be deemed to have rejected the offer. This Henley did by his letter of April 17. Compare Huso v. Bismarck Public School Board, *supra,* in which the teacher failed to notify the school board, in writing, of his acceptance of the statutory offer of re-employment.

In this case the notice informed the appellant that he would not be offered a contract for the next school year, and that his contract would terminate at the end of the school year. This leads us to a consideration of Section 15-47-38, N.D.C.C., which reads:

"15-47-38. Legislative intent in employment of teachers—Notification of discharge or failure to renew—Hearing. —1. The legislative assembly, in recognition of the value of good employer-employee relationships between school boards of this state and the teachers employed in the school systems, the need to recruit and retain qualified teachers in this state, and further in recognition of the many intangibles in evaluating the performance of individual members of the teaching profession, urges that each school board of this state ensure through formally adopted policies, that channels of communication exist between the board, supervisory personnel, and teachers employed within its school system. It is the intent of the legislative assembly that in the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the

contracts of teachers, that recognition be given by school boards to damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency.

"2. The school board of any school district contemplating discharging a teacher prior to the expiration of the term of the teacher's contract, or contemplating not renewing a teacher's contract shall notify such teacher in writing of such fact at least ten days prior to the date of discharge or final date to renew the teacher's contract. Such teacher shall be informed in writing that he may request and appear at a meeting to be held by the school board prior to the final decision of such teacher's discharge or failure to renew such teacher's contract. The school board shall give an explanation and shall discuss· at such meeting its reasons for the contemplated decision of the board in discharging such teacher or refusing to renew the teaching contract of the teacher. The meeting shall be an executive session of the board unless both the school board and the teacher requesting such meeting shall agree that it shall be open to other persons or the public. The teacher may be represented at the meeting by a person of his own choosing. If the teacher so requests, he shall be granted a continuance of not to exceed seven days by the board, unless for good cause otherwise shown. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of a school board held for the purposes provided in this section." N.D.C.C.

Under this section, which was first enacted in 1967 as S.L.1967, ch. 147, and amended in 1971, the first notice given by the school board to the teacher must be one which informs the teacher that it is "contemplating not renewing" his teacher's contract. The notice given to the appellant was one of finality, of the kind the law requires in informing the teacher of "the final decision" of its failure to renew his teacher's contract. Notice of the final decision cannot be used as a substitute for the notice of the contemplated course of action. If a teacher is to benefit from a meeting and the opportunity to appear at the meeting and present his side with the hope that he may dissuade the board in its contemplated action, the action must only be contemplated and not final.

Under Section 15–47–27, N.D.C.C., notice of "the determination not to renew the teacher's contract for the ensuing year" must be given "on or before April fifteenth in any year and not earlier than February fifteenth." This means that the preliminary notice, the notice required under Section 15–47–38, N.D.C.C., must be given "at least ten days prior to the . . . final date to renew the teacher's contract" [emphasis added], but also as much earlier as necessary to afford the teacher an opportunity to appear before the school board with respect to its contemplated course of action, and to afford the school board the opportunity to make its "final decision" and to give the required notice thereof to the teacher. This construction harmonizes the two statutes so that effect can be given to both.

We conclude that the "continuing contract" of the appellant was never terminated, that the trial court should have granted the relief in mandamus requested by the appellant, but because relief in mandamus is no longer possible, the school year of 1972–1973 having been completed, the ac-

tion must be remanded to the trial court for the purpose of ascertaining the compensatory damages to which the appellant is entitled.

Judgment reversed and case remanded for further proceedings conformable to law.

ERICKSTAD, C. J., and VOGEL, TEIGEN and KNUDSON, JJ., concur.

The Honorable WM. L. PAULSON deeming himself disqualified did not participate; the Honorable EUGENE A. BURDICK, Judge of the Fifth Judicial District sitting in his stead.