Edward BAKER, Plaintiff-Appellee,

v.

MINOT PUBLIC SCHOOL DISTRICT NO. 1, a Public Corporation, Defendant-Appellant.

Civ. No. 9287.

Supreme Court of North Dakota.

May 13, 1977.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant-appellant; argued by Walfrid B. Hankla, Minot.

Daniel J. Chapman, Bismarck, for plaintiff-appellee.

PAULSON, Justice.

This is an appeal from the judgment of the district court of Ward County, dated August 26, 1976, which judgment held that the defendant, Minot Public School District No. 1 [hereinafter the Board], failed to comply with the law regarding nonrenewal of a teacher's contract in that the Board acted unreasonably and arbitrarily and abused its discretion, because the reasons given by the Board for such nonrenewal were not sufficient to justify the nonrenewal of the teaching contract of the plaintiff, Edward Baker [hereinafter Mr. Baker]. The district court found that the Board had failed to give maximum consideration to basic fairness and decency and that the Board had not acted in good faith. Because a new school year had not yet commenced and because a position for which Mr. Baker qualified was open in the Board's school system, the district court ordered that the Board offer such position to Mr. Baker.

The judgment appealed from is based upon the following findings of fact, conclusions of law, and order for judgment:

"FINDINGS OF FACT

"I.

"That the Plaintiff was a teacher in the Defendant school district for the 1975–1976 school year and continued to teach through the conclusion of the past school year.

"II.

"That the Minot school board notified the Plaintiff that it intended to non-renew his contract for the year 1976–1977.

"III.

"That as permitted by law, the Plaintiff requested a meeting with the school board for the purpose of discussing and acting upon the contemplated non-renewal of his contract and this hearing was held on the 1st day of April, 1976.

"IV.

"That the basis for the non-renewal of the Plaintiff's contract as stated by the board is substantially as follows:

"On March 2, 1976, Mr. Baker left his 7:45–8:40 A.M. Math class 20 minutes early to return to home to shovel snow off his sidewalk. There had been a 12–inch snowfall during the night. He spent most of the next hour, which normally would be his preparation hour in school, clearing his sidewalk. He returned to the school at 9:30 A.M. When he left the school 20 minutes before the class would have normally ended he did not sign out or notify the principal that he was leaving the building. A handbook which is distributed to all teachers provides among other things:

" 'SUPERVISION

'It must be understood that students are expected to be under supervision at ALL TIMES. A teacher's absence from his area of supervision does not relieve him of the responsibility. Absence may be proven as neglect & the liability then falls on the teacher. The teacher should not leave the area in which he is supervising. Remain with

your class at all times. If for some reason you must leave your class, inform the office of the principal and a replacement will be found for you. Offices are not considered part of a classroom area.

" 'EMERGENCY

'If a teacher has an urgent reason to leave the building during the school day, the principal's office must be notified, and the sign-out procedure followed.'

"Mister Baker acknowledged to the board that he was aware of the above rules and states that he had followed them closely for several years. He has been a teacher in the Minot Public schools for seven years. He acknowledges that it was the wrong thing to do and he apologized to the school board stating that it would not happen again. He said he had decided to leave early and neglected to sign out in his haste to get home to shovel the sidewalk of a large accumulation of snow. He stated that he had a small class of nine students and that he had given them a new assignment and that after discussing the assignment with them and asking them if they had any questions, he said, 'Well, if there are not, then I would like you people to stay in the classroom and I am going home to shovel snow.' Mister Baker informed the board that the class was working on one of the less difficult lessons, that the class had been under him for three quarters, and he felt that the students would accept the responsibility of remaining in the classroom without supervision for 20 minutes.

"V.

"That the Plaintiff was a teacher in the public schools of Minot for the past seven years and his attendance record has been very good.

"VI.

"That no derogatory statements against the Plaintiff, except the incident detailed hereinbefore, was given during the course of the testimony before the board and, in fact, the principal of the school, together with the assistant principal and the departmental chairman of mathematics, appeared before the board and praised the Plaintiff.

"VII.

"That the witnesses stated that Plaintiff's classroom work was satisfactory, he was an enthusiastic teacher who created enthusiasm among his students, he was a dedicated teacher with a good attitude, he got along very well with his students, he had few disciplinary problems with his class, he was always on time, he was extremely cooperative, he was very expressive, he was a good algebra teacher and that he faithfully attended departmental meetings of the Math teachers.

"VIII.

"That the school board followed the procedure outlined by law in arriving at its decision not to renew the Plaintiff's contract.

"IX.

"That the decision of the board was three to two not to renew the Plaintiff's contract.

"X.

"That the Court finds that as a matter of fairness, a teacher who has been a dedicated, enthusiastic and cooperative teacher in the school system for seven years deserves the maximum consideration to basic fairness and decency set forth in Subsection 1 of the 1975 Amendment to Section 15–47–38 when considering whether a contract for such a teacher should be renewed.

"XI.

"That the Court finds that undue emphasis was given by one or two members of the board upon the fact that since the administrators had recommended the renewal, the board should go along with their recommendation.

"XII.

"That the Court finds, according to law, that this is a decision the board must make under the law and the evidence.

"XIII.

"That the Court finds that the school board acted unreasonably, arbitrarily,

and abused its discretion, and that the reasons given by the school board were not sufficient to justify the non-renewal.

"XIV.

"That the Court finds that the school board did not give maximum consideration to basic fairness and decency and did not give serious consideration to the damage that can result to the professional stature and reputation of a teacher in such a circumstance.

"XV.

"That the Court further finds that the school board did not act in good faith.

"From the above and foregoing Findings of Fact, the Court makes the following Conclusions of Law:

"CONCLUSIONS OF LAW

"I.

"That the school board in the instant case failed to comply with the law regarding non-renewal of teachers in that it acted unreasonably, arbitrarily, and abused its discretion, and the reasons given by the school board were not sufficient to justify the non-renewal.

"II.

"That the school board failed to give maximum consideration to basic fairness and decency and did not act in good faith.

"III.

"That the Plaintiff is entitled to judgment against the Defendant.

"IV.

"That in view of the fact that the school year has not yet commenced and that there is a position open in the Defendant school district, it is the Order of the Court that the Defendant school district must offer this position in the Math department to the Plaintiff.

"V.

"That the Plaintiff have his costs and disbursements herein."

The Board seeks reversal of the judgment of the district court for three reasons:

1. The district court clearly erred in determining that the Board acted frivolously or arbitrarily in deciding to non-renew Mr. Baker's contract.

2. The district court erred in overriding the discretionary action of the Board in non-renewing Mr. Baker's teaching contract.

3. The district court erred in employing an improper remedy when it required the Board to offer a teaching position to Mr. Baker, when, if relief were to be granted, it should have been in the form of compensatory damages.

I.

Our review of the Board's first contention, that the district court clearly erred in determining that the Board acted frivolously or arbitrarily in deciding not to renew Mr. Baker's teaching contract, is restricted by application of Rule 52(a) of the North Dakota Rules of Civil Procedure. The findings of the district court will not be disturbed unless "clearly erroneous".

Subsections 1 and 5 of § 15–47–38 of the North Dakota Century Code, as amended, provide:

"1. The legislative assembly, in recognition of the value of good employer-employee relationships between school boards of this state and the teachers employed in the school systems, the need to recruit and retain qualified teachers in this state, and further in recognition of the many intangibles in evaluating the performance of individual members of the teaching profession, urges that each school board of this state ensure through formally adopted policies, that channels of communication exist between the board, supervisory personnel, and teachers employed within its school system. In the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, school boards shall give serious consideration to the damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only

after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency.

"5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify such teacher in writing of such contemplated nonrenewal no later than April first. Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. Such teacher shall also be informed in writing of the reasons for such nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The school board shall give an explanation and shall discuss and confirm at such meeting its reasons for the contemplated nonrenewal of the contract. The meeting shall be an executive session of the board unless both the school board and the teacher shall agree that it shall be open to other persons or the public. The teacher may be represented at such meeting by any two representatives of his own choosing. In addition to board members, the school district clerk, and the superintendent, the school board may be represented by two other representatives of its own choosing at such executive session. Upon such hearing, if the teacher so requests, he shall be granted a continuance of not to exceed seven days. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of the school board held for the purposes provided for in this section. The determination not to renew a contract if made in good faith shall be final and binding on all parties. Final notice of the determination not to renew a contract shall be given in writing by April fifteenth as provided in section 15–47–27."

Section 15–47–38, N.D.C.C., was substantially amended by the Legislature in 1975, subsequent to our decision in *Dathe v. Wildrose School District No. 91*, 217 N.W.2d 781 (N.D.1974). In *Dathe, supra*, this court noted that § 15–47–38, N.D.C.C., as it then provided, did not require that the reasons given for the nonrenewal of a teaching contract justify the action taken by a school board. However, this court did assert in *Dathe* that the reasons for such nonrenewal had to relate to the ability, competence, or qualifications of a teacher, as a teacher, and should not be irrelevant to teaching, and that the reasons given should be capable of being articulated. Beyond such restriction, this court noted that the school board had free range to terminate a teacher's employment by following the statutory nonrenewal procedure.

A comparison of the former provisions of § 15–47–38 with its present provisions reveals the following differences: (1) in subsection 1 of § 15–47–38, the 1975 Legislature changed the precatory nature of the admonition that the school boards consider the professional stature and reputation of teachers into a mandatory requirement; (2) subsection 5 of § 15–47–38 was amended to

add the requirement that the reasons for nonrenewal had to be furnished to a teacher in writing; (3) in subsection 5 of § 15–47–38 the requirement was added that the reasons *"shall be sufficient to justify the contemplated action of the board"*; (4) in subsection 5 of § 15–47–38, the requirement was added that the reasons should not be frivolous or arbitrary, but should be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the school district such as lack of funds; and (5) in subsection 5 of § 15–47–38, the requirement was added that the school board be required to furnish an explanation and discuss and confirm the reasons for its contemplated nonrenewal of a teaching contract. We note that the changes in the new law require that a school board give serious consideration to the effect the board's action will have upon the professional stature and reputation of a teacher, requiring that such action be taken with maximum consideration to basic fairness and decency. We disagree with the Board's characterization of the 1975 amendments of § 15–47–38, N.D.C.C., as merely a codification of our decision in *Dathe, supra.*

■ The Board asserts that because the Board's actions were based upon Mr. Baker's conduct in his capacity as a teacher, such action was not grounded upon frivolous or arbitrary reasons. Such an interpretation would allow contract nonrenewal based upon any complaint grounded upon actions taken by a teacher in his capacity as a teacher, regardless of the complaint's significance. We find such interpretation to be contrary to our Legislature's intent. When the Legislature amended § 15–47–38, N.D.C.C., it changed the "pious hopes and exhortations" contained therein into a statutory mandate that a school board give serious consideration to damage that can result to the professional stature and reputation of a teacher as a consequence of a board's decision not to renew a teacher's contract. Further, the amended statute requires that the reasons for nonrenewal of a teacher's contract be sufficient to justify nonrenewal and shall not be frivolous or arbitrary, and shall be related to the ability,

competence, or qualifications of a teacher in his capacity as a teacher.

■ The findings of the district court are adequately supported by the record in the instant case. The transcript of the proceedings before the Board is void of any testimony or evidence to show that the Board had given serious consideration to the effect the nonrenewal of Mr. Baker's teaching contract would have upon his professional stature and reputation; it also appears from the transcript that one, if not two, of the Board members based their decision on the school administrator's recommendation, rather than upon the evidence before the Board, as is required by law; and, finally, it appears that the reaction of the Board to Mr. Baker's commission of a breach of the rules contained in the Teachers' Handbook (1975–1976) of the Minot High School as reported to the Board—when compared with his seven years of dedicated, enthusiastic, and cooperative teaching in the Minot public school system as the record discloses—is unduly harsh. We therefore affirm the findings of the district court that the Board acted unreasonably and arbitrarily and abused its discretion, and that the reasons given by the Board were not sufficient to justify the nonrenewal of Mr. Baker's teaching contract.

## II.

The Board contends that the district court erred in overriding the discretionary act of the Board in not renewing Mr. Baker's teaching contract. The Board asserts that the exercise of its discretion is not subject to review by the courts, except in a case of clear or gross abuse of discretion, clear violation of law, fraud, bad faith, or the transcending of the Board's legal authority. We disagree.

■ The 1975 Legislative Assembly, by its amendments of § 15–47–38, N.D.C.C., has placed upon the courts of this State the responsibility of reviewing the decision of a school board when an appeal is taken by a teacher whose contract has not been renewed. Section 15–47–38, N.D.C.C., as

amended, requires more than mere procedural compliance. A school board's decision to renew or not to renew a teacher's contract is no longer purely a discretionary act, but, rather is an act subject to the procedural and substantive requirements set forth in § 15–47–38, N.D.C.C.

■ In the instant case, the district court properly reviewed the action of the Board to determine if its action conformed to the procedural and substantive requirements set forth in § 15–47–38, N.D.C.C., and, as indicated in Part I herein, the district court properly found the Board's reasons for nonrenewal to be insufficient to justify the action of the Board.

### III.

■ Finally, the Board contends that the district court erred in employing an improper remedy when it required the Board to offer a teaching position to Mr. Baker, and argues that if relief were to be granted, it should have been in the form of compensatory damages. The Board's contention is premised on the rule that personal service contracts are generally not specifically enforceable affirmatively. Section 32–04–12, N.D.C.C.; *Henley v. Fingal Public School District No. 54*, 219 N.W.2d 106, 108 (N.D. 1974); 11 Williston on Contracts § 1423, p. 783 (3d ed. 1968).

■ But, we held in *Henley, supra*, 219 N.W.2d at 110, that in cases where the continuing contract of a teacher has not been legally terminated, a writ of mandamus would be available in cases where factual circumstances permit. In the instant case, the nonrenewal of Mr. Baker's contract was just as improper and as legally ineffective to terminate his "continuing contract" as was the case in *Henley, supra*.

■ Equity is not inflexible and the power of a court of equity to grant such a remedy depends upon the factual situation involved and the need for a given remedy in a particular case. *See* 11 Williston on Contracts, *supra* § 1424, at 786. A shift away from the traditional rule is mandated in the instant case by the social policy expressed by our Legislature in § 15–47–38(1), N.D. C.C., wherein it requires school boards to " . . . give serious consideration to the damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency."

A lack of precedent is no obstacle to equitable relief which may be appropriate in a particular factual setting.

■ In the instant case, to limit Mr. Baker's remedy to a recovery of compensatory damages (which are difficult to ascertain because of the indefinite duration of a teaching contract and because it is difficult to appraise the value of lost stature and reputation) would thwart the protection of the very interests our Legislature has sought to protect. We recognize that there will be instances in which the traditional rationale supporting the refusal of courts of equity to enforce personal service contracts will exist, and the forcing of a school board to rehire a teacher or to renew the contract of a teacher would not be for the best interests of a school district; but, in the instant case, where the school year has not yet commenced, where a position is open within the school board's school system for which position a wrongfully dismissed teacher is qualified, where the school district is one that is large enough to absorb the dismissed teacher into its system without creating a disruptive situation, where there is no showing that friction exists between the wrongfully dismissed teacher and his administrators, and where the wrongfully dismissed teacher has a good record as a teacher—it is proper for the district court to require a school board to offer a teaching position to the wrongfully dismissed teacher

in cases in which the district court determines that it would be in the best interests of the wrongfully dismissed teacher and the school district.

Although we affirm the judgment of the district court at the time it was rendered, subsequent developments related to this Court by counsel on oral argument indicate that such judgment may now be impossible to apply in the instant case. We take cognizance that the trial court stayed the judgment pending appeal and another teacher was employed to fill the vacant position. We therefore remand to the district court to determine whether or not changed circumstances render such judgment inappropriate, and, if so, to apply the alternative remedy of damages.

ERICKSTAD, C. J., and SAND and VOGEL, JJ., concur.

PEDERSON, Justice (dissenting).

Obviously, Baker has ability, competence and qualifications to perform admirably the tasks of a teacher. If I were elected to be a member of the school board at Minot, I would vote to forgive him for violating the rule, and I would do that also for violators who have less ability, competence and qualifications, and then I would ask that the Board rewrite its rules so as to distinguish between rules that, when violated, are considered grounds for dismissal or nonrenewal and those that are merely advisory.

But I am not an elected Board member and my judgment has nothing to do with this case. I am not even a voter at Minot so I cannot even vote in the next election against Board members with whom I disagree.

Decisions of school boards are not appealable but, even in cases that have come to this Court where the review is pursuant to a statute making the administrative determination appealable, we have repeatedly said that courts will not substitute their judgment for that of the administrator. See, for example, § 28–32–21, NDCC, and cases annotated thereunder.

In *Bank of Hamilton v. State Banking Bd.*, 236 N.W.2d 921, 925 (N.D.1976), we said that: "This court, however, has indicated its reluctance to substitute its own judgment for that of qualified experts in matters entrusted to administrative agencies." And, in *Agnew v. Hjelle*, 216 N.W.2d 291 (N.D.1974), we held, in syllabus 3:

"Our review of the facts on appeal from a district court order reviewing an administrative order is limited to determining whether there is substantial evidence in the record to support the findings of fact of the administrative agency."

Admittedly, the Minot School Board does not come within the scope of the Administrative Agencies Practice Act (Chapter 28–32, NDCC), such as the State Banking Board in *Bank of Hamilton* and the State Highway Commissioner in *Agnew*. However, Banking Board determinations and Highway Commissioner determinations are specifically made appealable by statute, while School Board determinations, under § 15–47–38(5), NDCC, are not appealable but " * * * if made in good faith shall be final and binding on all parties."

The majority opinion treats the case as if it were an appeal and, in fact, calls it an appeal. The complaint filed by Baker prayed for an injunction or, in the alternative, for damages of $20,000.00.

Baker did not prove that the Board did not act in good faith but in fact admitted that he violated the rule and that the rule was a good rule. The trial court specifically found "that the school board followed the procedure outlined by law in arriving at its decision not to renew the Plaintiff's contract." Baker seems to suggest that the Board should have used other sanctions against him. Other sanctions would have to have been provided for in the contract and apparently weren't.

In seeking the injunctive remedy, Baker knew that he needed to allege that there was no adequate remedy at law—and he did so. Quite obviously, he also knew that he was not entitled to the injunction under either Chapters 32–05 or 32–06, NDCC, so

he asked for damages, which then acknowledged the existence of an adequate remedy at law.

It is simply a misinterpretation of the record to conclude, as the majority has, that the Board failed to give serious consideration to the effect nonrenewal will have on Baker's professional stature and reputation.

Four Board members testified: (1) Huwe, a college instructor and former teacher in the elementary and secondary level, said that he took into account various factors for and against Baker and " * * * weighed very heavily many qualities that I felt spoke for the candidate, and I weighed also the violation * * *." He voted for nonrenewal.

(2) Reardon, a dentist, testified that he took into account factors "for" and "against." He voted for nonrenewal.

(3) Summers, a businessman and president of the Board, testified that he was a personal friend of Baker and said his decision was made in good faith and upon the basis of the material brought by the administrators and other witnesses. He voted for nonrenewal after the vote was tied two-to-two.

(4) Berning, a lawyer, testified that he weighed considerations "for" and "against" and had difficulty arriving at his decision. He voted against nonrenewal.

None of the four Board members who testified were cross-examined. The record does not disclose why the fifth Board member did not testify. How the determination can be labeled "frivolous and arbitrary" is beyond me. The testimony was not incredible in any respect. See *Tri-County Electric Cooperative, Inc. v. Elkin*, 224 N.W.2d 785 (N.D.1974), where we indicated that decisions have a rational basis when supported by probative evidence. Rational decisions are not frivolous nor arbitrary. See, also, the recent South Dakota ruling in *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, 241 N.W.2d 580 (S.D.1976), and the recent definitions of "arbitrary" and "frivolous" in Words and Phrases, Volumes 3A and 17A.

The majority decision in this case establishes a precedent that we will find difficult in the future and, in effect, overrules numerous decisions involving scope of review of administrative decisions, and opens the door wide to abuses of the injunctive remedy. This case illustrates the principle that hard cases make bad law.

The judgment should be reversed.