Cynthia **SELLAND**, Plaintiff and Appellant,

v.

**FARGO PUBLIC SCHOOL DISTRICT NO. 1, a public corporation,** Defendant and Appellee.

Civ. No. 9528–A.

Supreme Court of North Dakota.

Oct. 15, 1979.

Rehearing Denied Nov. 28, 1979.

Chapman & Chapman, Bismarck, for plaintiff and appellant; appearances by Daniel J. Chapman and Charles L. Chapman, Bismarck, argued by Charles L. Chapman, Bismarck.

Tenneson, Serkland, Lundberg, Erickson, Leclerc & Marcil, Fargo, for defendant and appellee; argued by Jack G. Marcil, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment entered on January 31, 1979, in Cass County District Court, denying the plaintiff's writ of mandamus or damages in lieu thereof. We reverse and remand.

The facts are not in dispute. Cynthia Selland has been a school teacher in the Fargo Public School System, in the City of Fargo, North Dakota, since 1952. She was employed by the Fargo Public School District No. 1 [hereinafter referred to as the Board] during the 1977–78 school year.

For several years, the Board has had a mandatory retirement policy, Board Policy 5250, which reads as follows:

## "RETIREMENT PROVISIONS

"Employees of Fargo Public Schools must retire from regular district employment no later than June 30 following the sixty-fifth (65) birthday of the respective employee."

It is undisputed that Ms. Selland was well aware of this particular provision, and that it had been applied uniformly over the years.

On or about February 25, 1978, Ms. Selland sent a letter to Dr. Les Pavek, then the president of the Fargo Board of Education, attempting to persuade Dr. Pavek, and ultimately the Board, to change the mandatory retirement policy or make an exception in her case. The reason being that Ms. Selland reached the age of 65 on March 16, 1978, and desired to continue teaching.[1]

On March 7, 1978, Dr. Pavek sent a letter to Ms. Selland which read:

"Your request to extend your contracted teaching services beyond the mandatory retirement age of 65 as provided for in Board Policy 5250 has been reviewed by the Board. The Board has voted to continue the application of the policy without any deviation at this time."

Sometime between March 7, 1978, and May 10, 1978, Ms. Selland again wrote to Dr. Pavek, saying:

"Pursuant to the provisions of chapter 15–47–27 of the North Dakota Century Code, and in light of the school board's failure to comply therewith, I hereby accept your offer of reemployment for the 1978–79 school year."

On May 10, 1978, Dr. Pavek sent the following letter to Ms. Selland:

"Your recent letter (not dated) to me stating that you accept reemployment for the 1978–79 school year was again reviewed and considered by the Board.

"As stated in my letter to you of March 7, your previous request for reemployment was denied by the Board as you had reached the mandatory retirement age of 65 years provided by Board Policy No. 5250 with which you are familiar.

"Under these circumstances, your employment as a teacher will end at the completion of the 1977–78 school year. Nonaction of the Board under Section 15–47–27 N.D.C.C. is not effective to revive contract rights which have been terminated. Compulsory retirement provisions such as Board Policy 5250 have been sustained by the courts as enforceable and are not discriminatory."

A complaint was filed against the Board on May 30, 1978, seeking relief in the nature of a judgment requiring the Board to offer Ms. Selland a contract for the 1978–79 school year, pursuant to Section 15–47–27, N.D.C.C., and enjoining the Board from issuing a contract to any other person for Ms. Selland's teaching position. Accompanying the complaint was an order to show cause for a temporary restraining order pending appeal. A hearing on the order to show cause was held on June 8, 1978, after which Ms. Selland's application for a temporary restraining order was denied.

On July 31, 1978, Ms. Selland appealed to this court from the order denying the temporary restraining order and applied for a temporary restraining order pending the hearing on the appeal from the order of the district court denying the request for a temporary restraining order. After a hearing on the application for a temporary restraining order pending the hearing on the appeal, this court denied the application, saying:

"After due consideration, the application for a restraining order is hereby denied upon the following two grounds: (1) An obligation to employ another in personal service cannot be specifically enforced. Section 32–04–12(2), N.D.C.C., *Henley v. Fingal Public School District # 54*, 219 N.W.2d 106, 108 (N.D.1974). (2) If the application is construed as an application for a writ of mandamus under

1. The Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621–634 (1975), previously prohibited age discrimination with respect to individuals between the ages of 40 and 65. The Act was amended in 1978 to extend the prohibitions of the Act to individuals less than 70 years of age. This amendment took effect on January 1, 1979, 29 U.S.C.A. § 631 (Supp.1979). This was subsequent to the time Ms. Selland was forced to retire from teaching, and therefore would not apply to her case. *See also* Section 34–01–17, N.D.C.C., prohibiting discrimination because of age.

Chapter 32–34, N.D.C.C., it is notwithstanding, a matter within the sound discretion of the trial court, *Fargo Education Assn. v. Paulsen*, 239 N.W.2d 842 (N.D.1976), and the Court concludes that there has been no showing of an abuse of that discretion." *Selland v. Fargo Public School District No. 1*, Civil No. 9528 (N.D., August 15, 1978) (order denying application for temporary restraining order).

By a written stipulation between the parties, it was agreed that an appeal on the merits to this court would be moot. Thereafter, the case was set for trial on January 2, 1979.

An amended complaint was filed on January 2, 1979, seeking a judgment directing the issuance of a writ of mandamus compelling the Board to employ Ms. Selland as a teacher, or pay her all back pay for the period of time she had been unemployed as a teacher, as well as other damages and costs.

On January 25, 1979, the trial court made its findings of fact, conclusions of law, and order for judgment, denied the writ of mandamus, damages in lieu thereof, and dismissed the action.

Judgment was entered on January 31, 1979, and Ms. Selland appeals to this court from that judgment.

Ms. Selland raises two basic issues on appeal:

(1) Whether or not a mandatory retirement policy enacted by a school board, circumvents the rights of a teacher under the continuing contract laws and the procedural protections afforded teachers pursuant to Sections 15–47–27 and 15–47–38, N.D.C.C., respectively; and

(2) Whether or not a mandatory retirement policy is violative of the equal protection clause under the Fourteenth Amendment to the United States Constitution.

Section 15–47–27, N.D.C.C., provides as follows:

"15–47–27. *Time for renewal of teachers' contracts.*—Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, either by the action or nonaction of the school board or the director of institutions, on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier. Failure on the part of the teacher to provide such notification shall relieve the school board or the director of institutions of the continuing contract provision of sections 15–47–26 through 15–47–28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."

The language of the statute is clear and unambiguous. Section 15–47–27,

N.D.C.C., refers to *"[a]ny* teacher who has been employed by any school district . . ." No reference is made to an exception in said statute for teachers facing mandatory retirement. The statute further provides that failure on the part of the school board to give written notice to a teacher, on or before April 15, of a determination not to renew the teacher's contract for the ensuing school year, "shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year." This statutory offer to renew automatically arises after April 15, if the teacher has not received a written notice of nonrenewal. *Enstad v. North Central of Barnes Public School District No. 65,* 268 N.W.2d 126 (N.D.1978).

It is undisputed that Ms. Selland was employed by the Board during the 1977–78 school year. It is also undisputed that the notice required by Section 15–47–27, N.D.C.C., was not given by the Board in this case.

■ Furthermore, it is not denied that the Board failed to comply with the provisions of Section 15–47–38, N.D.C.C., granting teachers facing a nonrenewal of their contracts, the right to a hearing with the school board at an executive session prior to the issuance of a final decision to nonrenew a contract. This section *requires* that the school board give serious consideration to damage that can result to the professional stature and reputation of a teacher, as a consequence of a board's decision not to renew a teacher's contract. Further, the statute requires "that such action be taken with maximum consideration to basic fairness and decency." *Baker v. Minot Public School District No. 1,* 253 N.W.2d 444 (N.D. 1977).

In addition, subsection 5 of Section 15–47–38, N.D.C.C., reads:

"5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify such teacher in writing of such contemplated nonrenewal no later than April first. Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. *Such teacher shall also be informed in writing of the reasons for such nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff.* At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The school board shall give an explanation and shall discuss and confirm at such meeting its reasons for the contemplated nonrenewal of the contract. The meeting shall be an executive session of the board unless both the school board and the teacher shall agree that it shall be open to other persons or the public. The teacher may be represented at such meeting by any two representatives of his own choosing. In addition to board members, the school district clerk, and the superintendent, the school board may be represented by two other representatives of its own choosing at such executive session. Upon such hearing, if the teacher so requests, he shall be granted a continuance of not to exceed seven days. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of the school board held for the purposes provided for in this section. The determination not to renew a con-

tract if made in good faith shall be final and binding on all parties. Final notice of the determination not to renew a contract shall be given in writing by April fifteenth as provided in section 15–47–27." (emphasis added).

The narrow issue to be determined by this court is whether or not a school board must comply with the provisions of Sections 15–47–27 and 15–47–38, N.D.C.C., when a teacher's contract has been terminated pursuant to a mandatory retirement provision in school board policy.

The trial court relied on the South Dakota decision of *Monnier v. Todd County Independent School District*, 245 N.W.2d 503 (S.D.1976), to support the contention that the statutory protections afforded teachers under North Dakota law were not applicable to teachers facing mandatory retirement.

South Dakota has adopted a continuing contract law very similar to the continuing contract provisions existing in North Dakota in Sections 15–47–27 and 15–47–38, N.D. C.C. *See* SDCL 13–43–9.1 through 13–43–15. More important, South Dakota also has a specific statute pertaining to the enactment of mandatory retirement policies, which provides:

"A school board shall not establish a mandatory retirement age below sixty-five and shall permit the teacher to complete the contract year in which he becomes sixty-five years of age." SDCL 13–8–39.1.

The effect of the enactment of this statute is to limit the conceded right to establish a mandatory retirement policy to ages 65 or over.

In balancing the concept of teacher's continuing contract rights against the school board's right to enact a policy of mandatory retirement, the Supreme Court of South Dakota said:

"We conclude that after a school district has adopted a mandatory retirement policy, teachers within that district who attain the age of retirement specified in the policy are no longer entitled to the benefits of the continuing contract law. By its very terms the concept of mandatory retirement is inconsistent with the concept of continuing contract rights. One must yield to the other. To hold to the contrary would be to impose upon a school district's authority to enforce a mandatory retirement policy restrictions more stringent than those set forth by the legislature in SDCL 13–8–39.1." *Monnier, supra* at 505.

As to the teacher's right to notice and a hearing, the court went on to say:

"Once appellant attained age 65, however, she had no contractual or statutory right to the renewal of her contract and thus was not entitled to notice and a hearing as a matter of procedural due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570." *Id.*

The trial court in this case adopted the reasoning of the Supreme Court of South Dakota, as evidenced in paragraph 2 of the trial court's conclusions of law:

"2. The Defendant School District after having adopted a mandatory retirement policy was not required to comply with the procedures set forth in the continuing contract law pursuant to 15–47–27 and 15–47–38 NDCC. Teachers who reach the mandatory retirement age are not entitled to the benefits of the continuing contract law. To compel the School Board to follow such procedures under such circumstances would be meaningless and idle acts. By its very terms the concept of mandatory retirement is inconsistent with the concept of continuing contract rights. It is impossible to have both and therefore one must yield to the other. It would be a futile gesture for the School Board to have a hearing as to whether a contract should be renewed or not renewed because of such teacher reaching the mandatory retirement age when the policy of the School Board requires that there be no such non-renewal. South Dakota has substantially the same

continuing contract law with reference to school teachers in an almost identical factual situation as in the instant case. The Supreme Court of South Dakota in *Monnier v. Todd County Independent School District*, 245 N.W.2d 503 (SD 1976) ruled identically the same as above given."

We disagree. *Monnier, supra* is predicated upon the premise that a school board can enact a mandatory retirement policy under SDCL 13–8–39.1, and to require that notice be given under the continuing contract provisions would impose greater restrictions on school boards than those already imposed by the legislature.

We believe that in the absence of a specific statute granting school boards the power to enact a mandatory retirement policy, the rule enunciated in *Monnier, supra* should not apply. In reviewing the Board's decision, we must recognize that the statutory procedures afforded teachers were enacted to protect them from arbitrary discharge. Mandatory retirement, in and of itself, because of its finality could be arbitrary, and age alone, has little, if anything, to do with teaching ability, competence, or qualifications. *See Johnston v. Marion Independent School District*, 275 N.W.2d 215 (Iowa 1979). This view is somewhat bolstered by the Board's concession that Ms. Selland was a good and capable teacher, whose abilities were not at issue in this action.

The trial court, however, in its conclusions of law, found that there was statutory authority giving school boards the power to establish mandatory retirement policies within their respective districts:

"3. The Plaintiff contends that the South Dakota case, *Monnier v. Todd County Independent School District Supra*, is distinguishable from the facts in this case for the reason that South Dakota has a statutory consent to allow school districts to establish mandatory retirement policies while North Dakota does not have such mandatory retirement policy permitted directly by statute. Section 15–39.1–14 NDCC makes reference to the school board's authority to set retirement policy however, such reference is made indirectly when setting out the provisions of the Teacher's Fund for Retirement. School Boards in North Dakota have the general powers to contract with, employ and pay all teachers in the schools and to dismiss and remove for cause any teacher when the interest of the school may require it. Section 15–29–08 NDCC sets forth the general powers and duties of the school boards. There is no prohibition in said statute or any other statute stating that school boards do not have the power to establish mandatory retirement policies. Chapter 15–51 NDCC is a special act approved in 1885 applying solely to the school system in the City of Fargo. While the duties of the school board in the City of Fargo are substantially the same as other school boards throughout the State, the specific powers are enumerated in Section 15–51–17 NDCC. The statutes applicable specifically to the City of Fargo School District do provide authority of the school board to control and manage the schools of the City and from time to time adopt, alter, modify and repeal, as it may deem expedient, rules and regulations for their organization, grading, government and instruction."

In so concluding, the district court failed to recognize a very pertinent statutory rule of construction. Section 1–02–07, N.D.C.C., provides:

"1–02–07. *Particular controls general.*—Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

Section 15–29–08, N.D.C.C., merely sets forth the *general* powers and duties of school boards throughout the state, while

Section 15–51–17, N.D.C.C., applies solely to the Board of Education of the City of Fargo, and enumerates similar powers and duties. Neither section specifically mentions the power to establish mandatory retirement policies.

Nor can it be forcefully asserted that Section 15–39.1–14, N.D.C.C., gives the Board the power to establish a mandatory retirement act. Section 15–39.1–14, N.D.C.C., reads:

"15–39.1–14. *Retirement not mandatory—When retirement occurs.*—Nothing in this chapter shall be construed as requiring retirement at any specific age. If the teacher elects to teach beyond age sixty-five and is permitted to do so by the body for whom he works, he shall continue to earn credits at the same rate as prior to the age of sixty-five. Retirement shall be deemed to have occurred and benefits shall be payable from the date of last teaching prior to the filing of a written application for retirement benefits, except in the case of a teacher whose rights in the fund have become vested but who chooses not to retire prior to age sixty-five, in which case the benefits shall be paid from the date such teacher attains the age of sixty-five."

Here, the general provisions of Sections 15–29–08, 15–51–17, and 15–39.1–14, N.D.C.C., must give way to the very specific provisions of Section 15–47–38, N.D.C.C., relating to nonrenewal of a teacher's contract, and the reasons to be given in accordance therewith as the provisions of the latter are irreconcilable with the provisions of the former. For these reasons, we conclude that the provisions of Section 15–47–38, N.D.C.C., prevail over the sections of the Code asserted to apply in this case.

■ A school board's decision not to renew a teacher's contract is no longer a discretionary act. Rather, it is an act subject to the requirements of Section 15–47–38, N.D.C.C. *Baker v. Minot Public School*

*District No. 1, supra.* When the Board contemplates the nonrenewal of a teacher's contract, the reasons for such nonrenewal ". . . shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff." § 15–47–38, N.D.C.C.

■ The Legislature has not provided for an exception to the requirements articulated in Section 15–47–38, N.D.C.C., and in interpreting this statute, we are governed by the general principle that the letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit. Section 1–02–05, N.D.C.C.; *Barnes County Education Ass'n v. Barnes County Special Education Board*, 276 N.W.2d 247 (N.D.1979). Age is simply not an exception to Section 15–47–38, N.D.C.C., and the Board cannot transcend the statutory protections afforded teachers by the mere implementation of a mandatory retirement policy.[2]

■ The letter of May 10, 1978, from Dr. Les Pavek, president of the Fargo School Board, to Ms. Selland expressing the Board's final decision not to renew her teaching contract for the 1978–79 school year because she had reached the age of mandatory retirement, does not meet the requirements of Section 15–47–38, N.D.C.C. The letter cannot be considered as notice of a contemplated course of action. *See Pollock v. McKenzie County Public School District # 1*, 221 N.W.2d 521 (N.D.1974); *Henley v. Fingal Public School District # 54*, 219 N.W.2d 106 (N.D.1974).

This court has said that the school board has the burden to articulate a reason for nonrenewal of a teacher's contract, and to relate that reason to teaching ability, competence, or qualifications, or to the needs of the district. *Rolland v. Grand Forks Public*

---

**2.** *See State Hospital v. North Dakota Employment Security Bureau*, 239 N.W.2d 819 (N.D. 1976), where this court said that continuing in an employment after learning that the employ-er has a compulsory retirement policy does not make mandatory retirement under that policy "voluntary" on the part of the employee.

School District No. 1, 279 N.W.2d 889, 894, n. 7 (N.D.1979); *Dathe v. Wildrose School District No. 91,* 217 N.W.2d 781 (N.D.1974). The Board failed to meet this burden in the instant case.

Having concluded that, pursuant to Section 15–47–27, N.D.C.C., Ms. Selland was not given proper notice of the Board's contemplated nonrenewal of her teaching contract for the 1978–79 school year; and further, that the Board failed to comply with the procedural and substantive requirements of Section 15–47–38, N.D.C.C., we find that this constituted a statutory offer to renew her teaching contract for the ensuing school year under the terms and conditions of the then current year. Although it was unnecessary that she do so under the circumstances, this offer of reemployment was timely accepted by Ms. Selland prior to May 10, 1978. *See Lefor Education Ass'n v. Lefor Public School District No. 27,* 285 N.W.2d 524 (N.D.1979); *Enstad v. North Central of Barnes Public School District No. 65, supra.*

Finally, we must examine the rights and obligations of the parties in light of the relief that could have been granted by the trial court.

 In accordance with her amended complaint of January 2, 1979, Ms. Selland sought a writ of mandamus compelling the Board to employ her as a teacher in the Fargo Public School System, or damages in lieu thereof. A writ of mandamus will lie ". . . to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is precluded unlawfully by such inferior tribunal, corporation, board, or person." Section 32–34–01, N.D.C.C. However, where the remedial writ of mandamus can no longer be issued in time, and if granted will not be effectual, *i. e.,* where the school year has already been completed, the action must be remanded to the trial court to determine the compensatory damages to which the teacher is entitled. *Hen-*

ley v. Fingal Public School District # 54, supra; See Fargo Education Ass'n v. Paulsen, 239 N.W.2d 842 (N.D.1976). Here, the factual circumstances make injunctive relief impossible. Therefore, the trial court must determine the compensatory damages to which Ms. Selland is entitled.

For the reasons stated in this opinion, the judgment of the trial court is reversed and the case remanded for further proceedings conformable to law.

SAND, PAULSON and PEDERSON, JJ., and NORBERT J. MUGGLI, District Judge, concur.

MUGGLI, District Judge, sitting in place of VANDE WALLE, J., disqualified.